## BURKBURNETT BRIDGE CO. v. COBB et al.

No. 15905—Opinion Filed Jan. 27, 1925.

(Syllabus.)

**1. Commerce—State Line Bridges—Regulation of Tolls by State.**

A state has no power to regulate tolls upon a bridge connecting such state with another state.

**2. Same—Interstate Commerce—Traffic on State Line Bridge.**

A bridge across waters between two states and connecting such states is an instrument

of interstate commerce, and traffic across it is interstate commerce.

### 3. Same—Right of States by Reciprocal Action to Fix Tolls—Quaere.

Whether two states can, in the absence of legislation by Congress, fix by reciprocal action rates of toll and fares over bridges connecting such states, this court does not decide in this case.

### 4. Prohibition — Preventing Corporation Commission from Fixing Toll Rates on State Boundary Bridge.

Where the Corporation Commission seeks to establish rates of toll and fares over a bridge connecting two states, writ of prohibition will lie to prevent such action.

Application by the Burkburnett Bridge Company for a writ of prohibition against Joe B. Cobb, E. R. Hughes, and Frank C. Carter, as members of the Corporation Commission of the State of Oklahoma. Writ granted.

A. Carey Hough and George A. Henshaw, for plaintiff.

E. S. Ratliff, for defendants.

LESTER, J. This is an original action by the plaintiff, the Burkburnett Bridge Company, against the Corporation Commission of the state of Oklahoma, praying for a writ of prohibition requiring the defendants to desist from making or prescribing, or attempting to make or prescribe, rates to be charged by the plaintiff for the transportation of automobiles, vehicles, goods, chattels, and persons across the bridge spanning Red river between Oklahoma and Texas, near Burkburnett, in the state of Texas.

The petition alleges that the plaintiff owns and operates a toll bridge across Red river and across the state line between Oklahoma and Texas, and that neither the bridge nor any part thereof can be used for the purpose of transporting vehicles, goods, chattels, or persons across and over the same without crossing the state line between Oklahoma and Texas, and that all traffic across said bridge is interstate. It further alleges that a complaint was filed with the Corporation Commission setting forth that the rates being charged by the plaintiff were excessive, and prayed that the commission prescribe a scale of rates. The case was set for hearing and the plaintiff filed a plea to the jurisdiction of the commission. Whereupon it introduced certain evidence, and the evidence disclosed that all the buildings for the operation of said bridge, including the office and point where all collections are made, are in the state of Texas, and that an inspection of the bridge upon the part of the Corporation Commission shows that it is located 25 feet in Texas and 3,381 feet in Oklahoma. The commission overruled the plea to the jurisdiction of said commission, and thereafter proceeded with said cause. There is no material dispute about the facts in this case, and there is but one question of law for the court to determine.

The case most directly in point is that of Covington & C. Bridge Co. v. Commonwealth of Kentucky, 154 U. S. 204. Syllabus 1 reads as follows:

"Traffic across a river between states is interstate commerce, and a bridge over such river is an instrument of interstate commerce; and therefore a state has no power to fix charges for transportation of persons and property over a bridge connecting it with another state, without assent of Congress or the concurrence of such other state."

We quote at length from the opinion, for the reason that undoubtedly it is the leading case on the question before this court:

"Traffic across a river between states is interstate commerce and a bridge over such river is an instrument of interstate commerce; and therefore a state has no power to fix charges for transportation of persons and property over a bridge connecting it with another state without assent of Congress or the concurrence of such other state. * * * The power of Congress over commerce between the states, and the corresponding power of individual states over such commerce, have been the subject of such frequent adjudication in this court, and the relative powers of Congress and the states with respect thereto are so well defined that each case, as it arises, must be determined upon principles already settled, as falling on one side or the other of the line of demarcation between the powers belonging exclusively to Congress, and those in which the action of the state may be concurrent. The adjudications of this court with respect to the power of the states over the general subject of commerce are divisible into three classes: First, those in which the power of the state is exclusive; second, those in which the states may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive and the states cannot interfere at all. * * *

"But wherever such laws, instead of being of a local nature and affecting interstate commerce but incidentally, are national in their character, the nonaction of Congress indicates its will that such commerce shall be free and untrammeled, and the case falls within the third class of those laws wherein the jurisdiction of Congress is exclusive. Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091; Bowman v. Ry. Co., 125 U. S. 456, 8 Sup. Ct. 689, 1062.

"Subject to the exceptions above specified, as belonging to the first and second classes, the states have no right to impose restrictions, either by way of taxation, discrimination, or regulation, upon commerce between the states. That while the states have

the right to tax the instruments of such commerce as other property of like description is taxed, under the laws of the several states, they have no right to tax such commerce itself, is too well settled even to justify the citation of authorities. The proposition was first laid down in Crandall v. Nevada, 6 Wall. 35, and has been steadily adhered to since. That such power of regulation as they possess is limited to matters of a strictly local nature, and does not extend to fixing tariffs upon passengers or merchandise carried from one state to another, is also settled by more recent decisions, although it must be admitted that cases upon this point have not always been consistent.

"The question of the power of the states to lay down a scale of charges, as distinguished from their power to impose taxes, was first squarely presented to the court in Munn v. Illinois, 94 U. S. 113, in which a power was conceded to the state to prescribe regulations and fix the charges of elevators used for the reception, storage, and delivery of grain, notwithstanding such elevators were used for the storage of grain destined for other states. The decision was put upon the ground that elevators were property 'affected with a public interest' and that from time immemorial in England, and in this country from its first colonization, it had been customary to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, etc., and in so doing to fix a maximum of charge to be made for services rendered, accommodations furnished, and articles sold. That the decision does not necessarily imply a power in the states to prescribe similar regulations with regards to railroads and other corporations directly engaged in interstate commerce is evident from the remarks of the Chief Justice (p. 135) in delivering the opinion of the court: 'The warehouses of these plaintiffs in error are situated and their business carried on exclusively within the limits of the state of Illinois. They are used as instruments by those engaged in state as well as those engaged in interstate commerce, but they are no more necessarily a part of commerce than the dray or the cart by which but for them grain would be transferred from one railroad station to another. Incidentally they may become connected with interstate commerce, but not necessarily so. Their regulation is a thing of domestic concern, and certainly, until Congress acts in reference to their interstate relations, the state may exercise all the powers of government over them, even though in so doing it may operate upon commerce outside its immediate jurisdiction'. The principle in this case has been recently affirmed in Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468, and reaffirmed in Brass v. North Dakota, 153 U. S. 391, 14 Sup. Ct. 857, though not without strong opposition from a minority of the court. * * *

"It follows that if the state of Kentucky has the right to regulate travel upon such bridge and fix the tolls, the state of Ohio has the same right, and so long as their action is harmonious, there may be no room for friction between the states: but it would scarcely be consonant with good sense to say that separate regulations and separate tariffs may be adopted by each state (if the subject be one for state regulation), and made applicable to that portion of the bridge within its own territory. So far as the matter of construction is concerned, each state may proceed separately by authorizing the company to condemn land within its own territory, but in the operation of the bridge their action must be joint or great confusion is likely to result. It may be for the interest of Kentucky to add to its own population by encouraging residents of Cincinnati to purchase homes in Covington, and to do this by fixing the tolls at such a rate as to induce citizens of Ohio to reside within her borders. It might be equally for the interest of Ohio to prescribe a higher rate of toll to induce her citizens to remain and fix their homes within their own state, and as persons living in one state and doing business in another would necessarily have to cross the bridge at least twice a day, the rates of toll might become a serious question to them. Congress, and Congress alone, possesses the requisite power to harmonize such differences, and to enact a uniform scale of charges which will be operative in both directions. The authority of the state, so frequently recognized by this court, to fix tolls for the use of wharves, piers, elevators, and improved channels of navigation, has always been limited to such as were exclusively within the territory of a single state, thus affecting interstate commerce but incidentally, and cannot be extended to structures connecting two states without involving a liability of controversies of a serious nature. For instance, suppose the agent of the bridge company in Cincinnati should refuse to recognize tickets sold upon the Kentucky side, enabling the person holding the ticket to pass from Ohio to Kentucky, it would be a mere brutum fulmen to attempt to punish such agent under the laws of Kentucky. Or, suppose the state of Ohio should authorize such agent to refuse a passage to persons coming from Kentucky, who had not paid the toll required by the Ohio statute; or that Kentucky should enact that all persons crossing from Kentucky to Ohio should be entitled to a free passage, and thus attempt to throw the whole burden upon persons crossing in the opposite direction. It might be an advantage to one state to make the charge for foot passengers very low and the charge for merchandise very high, and for the other side to adopt a converse system. One scale of charges might be advantageous to Kentucky in this instance, where the larger city is upon the north side of the river, while a wholly different system might be to her advantage at Louisville, where the larger city is upon the south side.

"We do not wish to be understood as saying that, in the absence of congressional legislation or mutual legislation of the two states, the company has the right to fix tolls at its own discretion. There is always an implied understanding with reference to these structures that charges shall be reasonable, and the question of reasonableness must be settled, as other questions of a judicial nature are settled, by the evidence in the particular case. As was said in Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 217 (29, 158, 166) 1 Inters. Com. Rep. 382: 'Freedom from such imposition does not, of course, imply exemption from reasonable charges, as compensation for the carriage of persons, in the way of tolls or fares, or from the ordinary taxation to which other property is subjected, any more than like freedom of transportation on land implies such exemption. Reasonable charges for the use of property, either on water or land, are not an interference with the freedom of transportation between the states secured under the commercial power of Congress.' Nor are we to be understood as passing upon the question whether, in the absence of legislation by Congress, the states may by reciprocal action fix upon a tariff which shall be operative upon both sides of the river.

"We do hold, however, that the statute of the commonwealth of Kentucky in this case is an attempted regulation of commerce which it is not within the power of the state to make. As was said by Mr. Justice Miller in the Wabash Case: 'It is impossible to see any distinction in its effect upon commerce of either class between a statute which regulates the charges for transportation and a statute which levies a tax for the benefit of the state upon the same transportation.'"

Undoubtedly the state of Texas would have the same right to prescribe the rates for toll over the bridge across Red river to the same extent and in the same manner as the state of Oklahoma, and therefore great confusion would arise by reason of independent action upon the part of each state, and we therefore hold that the Corporation Commission of Oklahoma does not possess the authority to establish rates of toll or fares across the bridge in question.

A writ of prohibition cannot be used to prevent the institution of an action, but it operates to restrain some already pending action or proceeding.

Under section 20, article 9 of the Constitution of Oklahoma, authority and jurisdiction is vested in this court to issue the writ here prayed for, whenever such writ would lie to any inferior court or officer. Such occasions are presented where the court or officers act without jurisdiction, and hence from the view which we take in this case, will lie in this instance. It therefore follows that the writ prayed for will be granted upon promulgation of this opinion; notice thereof shall be given to the Corporation Commission, and the writ itself shall not issue except upon further application and a showing of necessity therefor.

NICHOLSON, C. J., and BRANSON, MASON, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 12 C. J. p. 67; (2) 12 C. J. pp. 23, 38; (4) 32 Cyc. pp. 601, 605.