## GANT et al. v. OKLAHOMA CITY

No. 21798.   Opinion Filed May 12, 1931.

Rehearing Denied June 30, 1931.

Twyford & Smith and Womack, Brown & Cund, for plaintiffs in error.

M. W. McKenzie, Municipal Counselor, and A. L. Hull, Asst. Municipal Counselor, for defendants in error.

KORNEGAY, J.   This is a proceeding in error from the district court of Oklahoma county.   Three district judges sat on the hearing, consisting of Judges Harve L. Melton, T. G. Chambers, and Lucius Babcock. The order complained of in the matter can be found at page 188 of the case-made, and is as follows:

"In the District Court in and for Oklahoma County, Oklahoma.

"Walter H. Gant, Knox L. Garvin, and A. D. Hudspeth, Plaintiffs, v. City of Oklahoma City, Oklahoma, a Municipal Corporation, and J. W. Van Meter, Defendants.   No. 65300.

### "Order.

"This matter came on to be heard on the 6th day of October, 1930, on the application of the plaintiffs for a temporary injunction and the cross-petition of the defendants, the city of Oklahoma City and J. W. Van Meter, superintendent of buildings, for a temporary injunction against the plaintiffs, and the court, composed of District Judges Lucius Babcock, Harve Melton, and T. G. Chambers, heard the demurrer of the defendants to the petition of the plaintiffs, and after argument, overruled the same, to which the defendants excepted, and thereupon the court heard the evidence introduced by the plaintiffs, and at the close of all testimony sustained demurrer thereto, to which the plaintiffs excepted, and thereupon the defendants applied to this court for a temporary injunction enjoining and restraining the plaintiffs, their agents, servants and employees, from going upon the property described

in said petition, to wit: 'Block nine (9), Mead's addition to Oklahoma City, Oklahoma county, Oklahoma,' for the purpose of erecting apparatus, machinery or equipment, or using the same in the drilling or operation of oil and gas mining on said property for an oil and/or gas well; and it appearing to the court that the parties have in open court stipulated that the evidence introduced by the plaintiff in this cause might be considered by the court as a part of the evidence of the defendants on its application for the temporary injunction; and it further appearing to the court that on the application of the defendants, that a temporary injunction should be granted, but without bond, because the city of Oklahoma City is a municipality and that this action should be dismissed as to the defendant J. W. Van Meter.

"It is, therefore, ordered that the defendant, the city of Oklahoma City, have a temporary injunction enjoining and restraining the plaintiffs, their agents, servants and employees, from erecting, constructing, maintaining, or operating any machinery, equipment, or apparatus used, or to be used for the purpose of drilling an oil and/or gas well, until the further order of this court, and that said injunction remain in force without bond on the part of the city of Oklahoma City, until further order by this court, and, thereupon, the plaintiffs excepted in open court to the order of the court granting this temporary injunction and requested the court for permission to supersede the order of injunction pending an appeal to the Supreme Court, and the court denied said request and refused to grant supersedeas, to which action of the court, the plaintiffs, in open court, excepted, and gave notice, in open court, of their intention to appeal to the Supreme Court from said order, and the Clerk is accordingly directed to cause proper entry thereof to be made, as provided by law, and the plaintiffs are granted their exceptions to the ruling of the court.

"It is further ordered that plaintiffs file petition in error in Supreme Court with'n 15 days from this date.

"Harve L. Melton,
"Lucius Babcock,
"T. G. Chambers,
"District Judges."

The motion for a new trial was filed on the 10th of October, 1930, upon the ground of irregularities in the proceedings of the court, errors of law occurring at the trial and excepted to by plaintiffs, error of the court in sustaining defendants' demurrer to plaintiffs' evidence, error of the court in refusing to grant the plaintiffs the temporary injunction prayed for, error of the court in granting to the defendants a temporary injunction, and error of the court in refusing to admit competent, relevant, and material evidence offered by the plaintiffs, to which said plaintiffs excepted.

The motion for a new trial was overruled, and exceptions were had. The case-made was prepared, signed, and settled, and the case is here submitted on briefs, with specifications of error five in number. They are as follows:

"1. The trial court erred in overruling plaintiffs' motion for a new trial on each and every ground therein set forth and contained.

"2. The judgment of the trial court granting defendants in error an injunction against plaintiffs in error is contrary to the law and not sustained by the evidence.

"3. The trial court committed error in refusing and not permitting plaintiffs in error to supersede said judgment.

"4. That the judgment of the trial court is not sustained by the evidence. The trial court erred in refusing plaintiffs a temporary injunction and in excluding competent and relevant evidence.

"5. The judgment of the trial court is contrary to the evidence and the law."

The points at issue are urged under the name of propositions. The first proposition is that section 8013, C. O. S. 1921, places the exclusive control in the hands of the Corporation Commission, with reference to the drilling of oil and gas wells, and that the city had no right to adopt any ordinance or rules or regulations attempting to govern or control the drilling of wells for oil and gas. The section referred to is as follows:

"8013. Oil and gas department established. The Corporation Commission is hereby empowered and authorized to create and establish an oil and gas department under the jurisdiction and supervision of the Corporation Commission, and is hereby authorized to appoint, with the approval and consent of the Governor, a chief oil and gas conservation agent, who shall have charge of the oil and gas department herein authorized."

The ordinance adopted by the city of Oklahoma City, undertaking to regulate the drilling of oil wells in the city limits, is set out at page 176 of the case-made. It is contended in the brief that if the city had any power to regulate the matter, it came by virtue of the police power. The history of the legislative acts concerning the Corporation Commission, and its oil and gas department, is set out in the brief, and the complaint is made that the regulations of the Corporation Commission on the subject should have been admitted in evidence. The

court below held that these rules and regulations were irrelevant in this case, and rejected the rules and overruled the contention of the plaintiffs in error.

Argument is made, and some United States Supreme Court decisions are cited bearing upon the attitude of that court with reference to federal and state control of interstate commerce, and thereby excluding state control. The decision of the Supreme Court of the United States in Adams Express Co. v. Croninger, 226 U. S. 491, with reference to the Carmack Amendment, is cited, and also the case of Burkburnett Bridge Co. v. Cobb et al., 108 Okla. 21, 233 Pac. 463, and also the case of Ingrid v. Central Railroad Co. of New Jersey, 216 Fed. 72, 132 C. C. A. 316, 665, and also the case of Oregon-Washington R. & Nav. Co. v. State of Washington (U. S.) 46 Sup. Ct. Rep. 279, and also American Railway Express Co. v. Morris. 129 Okla. 278, 264 Pac. 619. These were cases arising out of interstate commerce regulations, the regulation of which was by the Constitution especially conferred upon the federal authorities, and which they have explicitly regulated. But those cases are quite apart from the one we have here.

The cited section of the statute upon the subject, section 8013, is cited above. Sections 8014 and 8015 appear to be applicable sections and are as follows:

"8014. Corporation Commission—Jurisdiction. All authority and duties now conferred upon the Corporation Commission or other department of the state government in reference to the conservation of oil and gas and the drilling and operating oil and gas wells and the construction and regulation of oil and gas pipe lines, are hereby conferred exclusively upon the Corporation Commission.

"8015. Rules and Regulations—Plugging Wells. The Corporation Commission is here by authorized to prescribe rules and regulations for the plugging of all abandoned oil and gas wells. The same shall be plugged under the direction and supervision of the conservation agents of the Corporation Commission. All orders and regulations in reference to plugging wells shall be made after general hearing as now prescribed by law for the promulgation of orders by the Corporation Commission."

In this case, the city of Oklahoma City appears to be acting under a charter form of government. It was also a city when the Constitution of the state of Oklahoma was made. Its powers in these matters are largely affected by the provisions of the Constitution. By the Enabling Act, the laws in Oklahoma were extended over the state until changed by the Constitution or other law-making power of the state.

At the time Oklahoma came into the Union, there were certain laws defining the powers of cities and towns and prescribing their duties. Among other provisions is the provision now contained in section 4562, C. O. S. 1921, about protection against fire, which is as follows:

"4562. Protection Against Fire. The council may regulate the construction of, and order the suppression of and cleaning of fireplaces, chimneys, stoves, stovepipes, ovens, boilers, kettles, forges or any apparatus used in any building, manufactory or business, which may be dangerous in causing or promoting fires, and prescribe limits within which no dangerous or obnoxious and offensive business may be carried on.

"The council may also prescribe limits within which no buildings shall be constructed except of brick, stone, or other incombustible material, with fireproof roof, and impose a penalty for the violation of such ordinance; and may cause buildings commenced, put up, or removed into fire limits, in violation of such ordinance, to be removed or abated.

"The council may also procure fire-engines, hooks, ladders, buckets and other apparatus, and organize fire-engines, hook and ladder and bucket companies, and prescribe rules of duty for the government thereof, with such penalties as they may deem proper, not exceeding one hundred dollars, and make all necessary appropriations therefor."

Other powers are given and duties are prescribed in section 4547, C. O. S. 1921, under the head of "General Powers." The section is as follows:

"4547. General Powers. The mayor and council shall have the care, management and control of the city and its finances, and shall have power to enact, ordain, modify or repeal any and all ordinances not repugnant to the laws of the United States and the Constitution and of this state, as they shall deem expedient and for the good government of the city, the preservation of the peace and good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, and the benefit of trade and commerce, and the health of the inhabitants thereof, and such ordinances, rules and regulations as may be necessary to carry such power into effect. They shall divide the city into not less than four wards, and establish the boundaries thereof. The council shall have no power to allow or pay any debt or obligation of any character arising from any act done, or thing bought by any provisional government, formerly existing, where the cities now are, nor of any

debt, to any person made therewith under any guise whatsoever, unless authorized. so to do by a majority of the legal voters of such city."

The ordinance in this case is lengthy and the briefs have largely confined the discussion to certain phases of it. An examination of the cases cited under proposition 1 does not disclose that there is anything in them that would warrant us in holding that the general police power of Oklahoma City to provide for the safety and health of its inhabitants is in any way taken away by virtue of the jurisdiction conferred upon the Corporation Commission to superintend the drilling for oil and gas, and their carrying and preservation.

Under proposition No. 2, the argument is that section 21 of ordinance 3944 of Oklahoma City violates section 1 of article 14 of the Constitution of the United States, and section 2 of article 2 of the Constitution of the state of Oklahoma, and section 7 of article 2 of the Constitution of the state of Oklahoma, and is therefore void. Those sections are set out at page 31 of the brief, and are as follows:

"Section 1, article 14, of the Constitution of the United States, among other things, provides: 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction equal protection of the laws.'

"Section 2, article 2, of the Constitution of the state of Oklahoma, provides: 'All persons have the inherent right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry.'

"Section 7, article 2, provides: 'No person shall be deprived of life, liberty or property without due process of law'."

And the section of the ordinance complained of is as follows:

"No permit for the drilling or putting down of any petroleum or natural gas well shall be issued to any person, firm or corporation, and no well for which permit has been heretofore issued, shall be drilled into any producing oil or gas horizon, until there shall be filed with the clerk of the city of Oklahoma City a good and sufficient bond covering each well for which permit is applied, and executed by some bonding or indemnity company authorized to do business in the state of Oklahoma, running in the name of Oklahoma City and conditioned that the applicant will pay and discharge any liability imposed by law for damages on account of injury to property, either private or public, or bodily injury, includ-

ing death, received or suffered by any person or persons, firm or corporation, and resulting from the drilling, operation or maintenance of any well or any structures, equipment, machinery, tanks, pipe lines or appurtenances thereto, and will abide by and comply with all the provisions of this ordinance; said bond shall be approved by the city council. The maximum total liability, under said bond, for loss or damage, either to person or property, shall be $200,000. Such bond shall be made for a period of not less than one year, and a new bond shall be furnished at the expiration of any existing one, if the operation of such well covered thereby is continued. If at the time of such renewal all drilling on such well has been completed, the amount of total liability, under such bond, may be reduced to $50,000. In the case any bond required herein shall lapse or become void for any reason whatsoever, the permit issued under the terms of this ordinance shall immediately become inoperative and void until a new bond shall be provided and filed with the city clerk or the existing bond reinstated in full force, and such well shall be shut down and all operations and production thereof suspended and discontinued until the filing of such new bond or reinstatement of such existing bond; said renewal bond shall be approved by the city council. The provisions of this section shall apply to all wells, although permits have been previously issued therefor."

The case of Dobbins v. Los Angeles, 195 U. S. 223, 47 L. Ed. 119, is cited to the effect that the court has power to pass upon the reasonableness of the ordinance adopted by the city and the exercise of its power for the protection of its inhabitants. The case of Lawton v. Steele, 152 U. S. 133, 38 L. Ed. 385, is cited, and a case from the Supreme Court of the state of Oklahoma, Walcher v. First Presbyterian Church of Norman, 76 Okla. 9, 184 Pac. 106, is cited with reference to unnecessary restrictions and the tendency of the ordinance to protect public health, morals, safety, or welfare. The case of Yick Wo v. Hopkins, 118 U. S. 356, 30 L. Ed. 220, is cited, discussing the necessity of the legislative acts for inferior and municipal bodies being reasonable. Other cases cited are as follows: Reagan v. Trust Co., 154 U. S. 362; Hopkins v. Richmond, 117 Va. 692, 86 S. E. 139; 19 R. C. L., par. 112, p. 305, and par. 113, p. 808; City of Baltimore v. Radecke, 49 Md. 217; Walcher et al. v. First Presbyterian Church of Norman, supra; Holden v. Hardy, 169 U. S. 366, 42 L. Ed. 780; Ex parte Throop (Cal.) 145 Pac. 1029; Pennsylvania Coal Co. v. Mahon et al. (U. S.) 43 Sup. Ct. Rep. 158, 67 L. Ed. 322; Nectow v. City of Cambridge et al., 277 U. S. 183, 72 L. Ed. 842; Abbey Land & Improvement Co. v. San

Mateo County (Cal.) 139 Pac. 1068; Continental Oil Co. v. City of Twin Falls et al. (Idaho) 286 Pac. 353; Youngstown v. Kahn, 112 Ohio, 654, 148 N. E. 842; In re Gribbon, 5 Okla. 379, 47 Pac. 1074; People v. Chicago, 49 L. R. A. (N. S.) 438; and the case of Village of Terrace Park v. Errett et al., 12 Fed. (2nd Series) 240. The case of Re John Kelso, 147 Cal. 609, 82 Pac. 241, and the case of Pacific Palisades Association v. City of Huntington Beach, 237 Pac. 538, are cited from California.

Numerous extracts are taken from each of these cases, and it appears that there runs through them all the underlying principle embodied in the maxim, "Sic utere tuo ut non laedas alienum," which, translated into modern phraseology, means "So use your own as not to hurt another."

The reply brief to the answer brief of defendants in error is largely a repetition of the matters set forth in the original brief, and cites similar authorities. Reference is made in the brief to the act of the Legislature of recent date allowing zoning and classification of areas and towns. We do not think that section of the statute was required in order to give to the governing power of the city of Oklahoma City the right to protect its own citizens from the encroachments of outsiders or encroachments of themselves.

The Constitution of Oklahoma provides in section 10 of the schedule for the continuation of the existence of municipal corporations such as Oklahoma City. In the body of the Constitution, section 2 of article 18, it is provided as follows:

"Sec. 2. Oklahoma law in force. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

Section 3 provides for special charters for city governments so long as their provisions are consistent with the laws of the state and subject to the Constitution. If additional power was necessary, it was in the power of the Legislature from time to time to confer it, as long as it is concerned with those matters of local self-government that from time immemorial have been conceded to belong to municipalities, which the general law-making power saw fit to confer. The case of Ex parte Johnson, 20 Okla. Cr. 66, 201 Pac. 533, dealt with a situation concerning the suppression of moving picture shows in the city of Bartlesville, and the opinion appears to sustain the syllabus, and the first three sections of the syllabus are as follows:

"1. Within the limits prescribed by the Constitution and statute laws of this state, cities existing under a special charter form of government may have larger powers of self-government than are accorded to cities existing under general laws.

"2. It is within the authority of the state, in the exercise of its police powers, to prohibit moving picture shows on Sunday; and such authority may be, by general law or by special charter, delegated to cities in the exercise of local self-government.

"3. It is for the law-making body of a municipality or for the people themselves, in the exercise of the initiative and referendum, to determine, within the bounds of reason, the necessity or expediency of specific police regulations, subject only to the limitations prescribed by the Constitution and statutes of this state."

A decision dealing with the Oklahoma City charter is found in the same volume at page 367; the first decision being by the Criminal Court of Appeals, the second one being by this court.

With reference to those general provisions made by the supreme authority for the protection of the lives and the health of the inhabitants of the municipality, there is a positive duty prescribed and a positive power conferred on the municipality; in fact, that is what it is organized for, as in a congested population there are so many matters calling for immediate action, and the situation changes so rapidly, that the Legislature, meeting every two years, could not effectually directly make the needed regulations. As applied to the present condition, it is conceded that the oil and gas wells in this case are within the corporate limits.

The concern that we have here is whether or not the wells are within the limits of Oklahoma City, and whether or not they are of such a kind that their drilling should be regulated by the city commissioners.

We must remember that Oklahoma is full of winds and that the winds are variable. We also know that in this case there is evidence that the wells not far distant would produce as high as 86,000 barrels of oil a day. We also know that the gas pressure is enormous, and that the site of the well in this case is so near to the populous part of the city that with a high wind and a break in the machinery the well is liable to get out of control and scatter oil and gas

over a large part of the city. As a property protection, the city was endowed with the power of regulation. But there is something far greater than property involved in this case, it is the safety of human life and health. On the other hand, there is at stake the chances of some men, joining with certain lot holders, who are trying to make a lot of money. We have on one side the people that want money, and on the other side the people that want life and its enjoyment in the home already provided.

Complaint is made most bitterly that the requirement of a $200,000 bond is unreasonable and void. When one considers the amount that the oil well holder expects, and the human lives that we know have recently been lost as a result of wild wells, the extra expense of furnishing some security for the benefit of the home owners is a very small factor. The cost of drilling the well is over $100,000, as we are informed. In the event wells within the corporate limits should become unmanageable, the stakes on the one side, as compared with the hope of profit on the other side, immediately throw the scales out of balance. If the well is a success, the full amount of the $200,000 bond would be the product of just a few days. If the well is a failure, the cost of the bond would not add more than two per cent. to the cost of the experiment.

It is further claimed that a personal bond is the only one that the small operator could possibly hope to get, and therefore it is an unjust discrimination. Viewed from the standpoint of the man who wants to make money, it might be. But this is not the case here. The case here is that some security for life and property of the people that built up the town is in the balance on the one side, and profit is in the balance on the other side.

We cannot see that the city ordinance, in requiring this $200,000 bond, is unreasonable, or unreasonable in requiring a surety known to be solvent and subject to regulation by our laws. The three judges below thought the regulations reasonable. Nothing has been shown indicating that the giving of this bond would in any manner interfere with the lawful rights of the plaintiffs below. It may be their misfortune that they do not get all they want, but the right of life and property, and to enjoy the gains of their own industry, is guaranteed to every person in the city of Oklahoma City by the state Constitution. Considering its size and cost, and considering the probable profits, it is not unreasonable as compared to the property of others endangered. As compared to the hazard to human life, it is a bagatelle.

The Supreme Court of the United States, time and again, reiterated the underlying principles. In the case of New York & New England Railway Co. v. Town of Bristol, 151 U. S. 556, 38 L. Ed. 272, there is an enunciation of this doctrine by Mr. Chief Justice Fuller, and in the body of the opinion, at page 272, the court says:

"It is likewise thoroughly established in this court that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health, and morals. The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury."

Some complaint is made of the failure to allow the rules of the Corporation Commission to be introduced. The judges below did not think that, as applied to this case, they were material. We are of the opinion that no error was committed by so doing.

We are further of the opinion that the regulation requiring the bond was a reasonable one. Complaint is made of the lower court's not allowing a supersedeas staying the effect of this temporary injunction granted the city. That question is now largely moot, and is not argued. Our statute does not allow a supersedeas as a matter of right in a case of that sort, it being within the sound discretion of the court.

We therefore affirm the action of the lower court in denying the injunction in favor of the plaintiffs below, and granting a temporary writ in favor of defendants in error. There are other provisions in the ordinance not here involved. The cost will be borne by the plaintiffs in error.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. RILEY and HEFNER, JJ., absent. CLARK, V. C. J., dissents.