### C. C. JULIAN OIL & ROYALTIES CO. v. OKLAHOMA CITY.

No. 21722. Feb. 20, 1934.

Freeling & Box and John Head, for plaintiff in error.

A. L. Hull, Municipal Counselor, and Bliss Kelly, Asst. Municipal Counselor, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Oklahoma county enjoining the plaintiff in error, the defendant in the trial court, from proceeding with the drilling of a well for oil or gas on property within the corporate limits of the city of Oklahoma City. The judgment was based on a finding that the defendant was violating a provision of city ordinance No. 3944 in that it was drilling a well for oil or gas without furnishing the bond required by a provision of that ordinance, as follows:

"No permit for the drilling or putting down of any petroleum or natural gas well shall be issued to any person, firm or corporation, and no well for which permit has been heretofore issued, shall be drilled into any producing oil or gas horizon, until there shall be filed with the city clerk ,of the city of Oklahoma City a good and sufficient bond covering each well for which permit is applied, and executed by some bonding or indemnity company authorized to do business in the state of Oklahoma, running in the name of Oklahoma City and conditioned that the applicant will pay and discharge any liability imposed by law for damages on account of injury to property, either private or public, or bodily injury, including death, received or suffered by any person or persons, firm or corporation, and resulting from the drilling, operation or maintenance of any well or any structures, equipment, machinery, tanks, pipe lines or appurtenances thereto, and will abide by and comply with all the provisions of this ordinance: said bond shall be approved by the city council. The maximum total liability, under said bond, for loss or damage, either to person or property, shall be $200,000. Such bond shall be made for a period of not less than one year, and a new bond shall be furnished at the expiration of any existing one, if the operation of such well

covered thereby is continued. If at the time of such renewal all drilling on such well has been completed, the amount of total liability, under such bond, may be reduced to $50,-000. * * *"

The record shows that at the time the judgment was rendered, the well was practically completed. The judgment restrained the defendant "from drilling, continuing to drill, or attempting to drill an oil or gas well on block two (2), Frost Heights addition," until the further order of the court.

The defendant contends that the ordinance was retroactive and therefore inoperative and void as against its previously acquired vested rights. It is in error in making that contention. While it had a right to drill a well for oil or gas, the city, under its police power pursuant to the provisions of chapter 178, Session Laws 1923, was authorized to impose restrictions upon the exercise of that right, and those restrictions were lawfully imposed, even though the ordinance was enacted after the drilling of the well had been commenced. We quote from 43 Corpus Juris, section 266, page 60, as follows:

"The police power of a municipal corporation being a continuing one, a permit does not exempt applicant from the operation of subsequent ordinances and regulations legally enacted by the corporation in the exercise of its police powers."

To the same effect are Wilder v. Little Rock (Ark.) 234 S. W. 479, and Dobbins v. Los Angeles, 195 U. S. 223, 49 L. Ed. 169, 25 Sup. Ct. 18. In Ex parte Carlson (Cal.) 262 P. 792, it was held:

"While the right to engage in a lawful and useful occupation cannot be taken away under the guise of regulation, such occupation may be subjected to regulation in the public interest, even though the exercise of power to regulate involves in some degree a limitation upon the exercise of the right regulated."

"The manner and extent of the regulation of occupations for the public interest are matters primarily for legislative determination, with which the courts cannot interfere unless it clearly appears that a statute enacted ostensibly for the purpose of regulation imposes an arbitrary and unreasonable burden upon the pursuit of the occupation."

The right of the state to regulate the drilling of wells for oil or gas has been determined by a number of courts. Marrs et al. v. City of Oxford et al., 32 Fed. (2d) 134; Osford Oil Co. v. Atlantic Oil & Producing Co., 22 Fed. (2d) 597; Ohio Oil Co. v. Indiana, 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. 576. By the provisions of section 6410, O. S. 1931, the state has delegated to cities the power and right "to enact and make all such ordinances, by-laws, rules, and regulations not inconsistent with the laws of the state as may be expedient for maintaining the peace, good government, and welfare of the city and its trade and commerce." The provision of the charter of the plaintiff granting power to the city to enact and enforce all ordinances necessary to protect health, lives, and property, is within the grant of power delegated and not inconsistent with the laws of the state. Chapter 178, Session Laws 1923, confers upon municipalities the right of regulating and restricting the use of property within the corporate limits by enacting a proper zoning ordinance to govern same.

The defendant contends that the provision of the ordinance requiring the bond is void. In McCurley v. City of El Reno et al., 138 Okla. 92, 280 P. 467, this court held:

"Where a city, intending to adopt, at the earliest practicable time, a permanent, comprehensive zoning ordinance, passes a temporary ordinance for the purpose of measurably controlling building during the interim in order that the benefits of the proposed zoning ordinance may not be lost, and when such temporary ordinance is attacked as unreasonable and arbitrary, this court will apply a liberal rule of construction not only to such ordinance itself, but also to the power of the city council to promulgate the same."

Therein this court quoted from Miller et al. v. Board of Public Works of City of Los Angeles et al. (Cal.) 234 P. 381, wherein that court held:

" 'It is a matter of common knowledge that a comprehensive zoning plan cannot be made in a day, and therefore court may take judicial notice that it will take much time to work out details of plan, and that it would be destructive if, during incubation of plan, parties should be permitted to enter on course of construction which might defeat ultimate execution of plan.

" 'That a comprehensive zoning plan had not matured to point of being an existing ordinance at time that an emergency zoning ordinance was enacted does not detract from validity of emergency zoning ordinance, on theory that zoning ordinance may not be ultimately enforced, as presumption that council will not fail in performance of official duty must prevail, and hence such emergency zoning ordinance, being part of comprehensive plan which has relation to wel-

fare of city, must be held to be a valid exercise of police power.' "

—and wherein that court said:

" The police power of a state is an indispensable prerogative of sovereignty and one that is not to be lightly limited. Indeed, even though at times its operation may seem harsh, the imperative necessity for its existence precludes any limitation upon its exercise save that it be not unreasonably and arbitrarily invoked and applied. Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; District of Columbia v. Brooke, 214 U. S. 138, 149, 29 S. Ct. 560, 53 L. Ed. 941.' "

In McCurley v. City of El Reno et al., supra, this court quoted from Ware v. City of Wichita, 113 Kan. 153, wherein that court said:

" 'Counsel for defendant cite cases which declare the general rule that a statute or ordinance should be construed as dealing only with conditions arising after its enactment, and that legislation should not be given a retrospective operation unless such intention is unequivocally expressed. But this zoning ordinance was undoubtedly designed as a police regulation to arrest the further indiscriminate construction of miscellaneous business buildings in the residential districts of the city, as well as to provide for the future harmonious development of the town. * * * Such municipal legislation is not invalid, and the fact that the defendant had applied for a permit, and that his right thereto as of the date of his application had been adjudicated in his favor, did not prevent the new ordinance, when it was enacted, from governing the situation. (Shepherd v. Kansas City, 81 Kan. 369, 375, 105 P. 531.)' "

—and:

" 'Even if the permit had been actually granted, it could have been revoked after the passage of the ordinance, if done with reasonable promptness and before the situation had been materially changed to the prejudice of the defendant. (City of Des Moines v. Manhattan Oil Co., 193 Iowa, 1096, syl. No. 2.)' "

In Marrs et al. v. City of Oxford et al., supra, that court held:

"The police power is an attribute of sovereignty to be exercised for the public welfare, and a law or ordinance passed in the exercise of this power is presumed valid until the contrary is shown."

In Gant et al. v. Oklahoma City et al., 289 U. S. 98, 77 L. Ed. 1058, 53 S. Ct. 530, that court was considering an appeal from this court and the provisions of the ordinance here complained of. It said:

"In view of the peculiar dangers incident to the drilling and operation of an oil or gas well within the limits of a city and of the large interest involved if the well be successful, neither the requirement for a bond nor the amount fixed can be declared arbitrary or unreasonable. Indeed, the objection to the ordinance on these grounds was but indifferently urged at the bar. The point stressed was that the provision of the ordinance requiring the bond to be given by a bonding or indemnity company authorized to do business in the state, and thereby excluding the furnishing of personal sureties, is so arbitrary and unreasonable as to constitute a denial of due process of law. That contention also is without merit. The most that can be said is that whether the guaranty of a bonding or indemnity company operating under state law and subject to state regulation, is of greater worth than that of personal sureties, is a question about which opinions reasonably may differ. But the question is one primarily addressed to the judgment of the law-making body, and that body having determined that the former is so far superior that the latter should be excluded from eligibility altogether, there is nothing in the due process of law clause of the Fourteenth Amendment which requires the courts to upset the conclusion."

See, also, State v. Seattle Taxicab & Transfer Co., 90 Wash. 416, 156 P. 837; State v. Ferry Line Auto Bus Co., 93 Wash. 614, 161 P. 467, and Smallwood v. Jeter Com. of Law Enforcement of Idaho, 244 P. 149.

The defendant contends that the city was wholly without power, right, or authority to require the giving of a surety bond which may be signed only by surety or indemnity companies authorized to do business within the state of Oklahoma.

That identical question has twice been considered by this court and each time determined contrary to the contention of the defendant. Gant et al. v. Oklahoma City, 150 Okla. 86, 6 P. (2d) 1065, and Gant et al. v. Oklahoma City et al., 160 Okla. 62, 15 P. (2d) 833. See, also, Standard Oil Co. v. City of Marysville, 279 U. S. 582, 73 L. Ed. 856, 49 S. Ct. 430.

It is contended that the Legislature of Oklahoma has conferred upon the Corporation Commission exclusive power to enact rules and regulations governing the drilling of wells for oil or gas within the state of Oklahoma, and that a city has no right or authority to adopt any ordinance, rule, or regulation attempting to govern or control the drilling of such wells. We cannot agree

with that contention. The delegation of power to the Corporation Commission did not operate to deprive the Legislature of power to delegate to cities the power delegated to them by the provisions of chapter 178, Session Laws 1923.

The defendant contends that the ordinance is in violation of the provisions of section 7, art. 23, of the Constitution of Oklahoma; that it is contrary to the Workmen's Compensation Law; that it interferes with contractual rights, and that it is an attempt to supersede enactments of the Legislature of the state of Oklahoma. Those contentions are without merit.

The judgment of the trial court is in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and OSBORN, JJ., concur.