PTAK v. CITY OF OKLAHOMA CITY.

No. 34003.    April 3, 1951.

*229 P. 2d 567.*

W.K. Garnett and Chas. H. Garnett, Oklahoma City, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor, and Raymond Gramlich, Asst. Municipal Counselor, Oklahoma City, for defendant in error.

LUTTRELL, V.C.J.  This action was brought by Fred Ptak against the defendant, city of Oklahoma City, to recover a $1,000 fee paid by plaintiff in order to obtain a permit to drill an oil and gas well upon lands owned by the state within the oil drilling zone of the city of Oklahoma City.

At the trial the parties stipulated that plaintiff was the owner of an oil and gas lease executed and issued by the Commissioners of the land Office of the State of Oklahoma, covering certain lands within the boundaries of the city of Oklahoma City; that on or about August 1, 1948, plaintiff made preparations to drill a well for oil and gas upon said lands under said lease, and applied to the city for a water connection for furnishing water required for said well; that the city denied this application on the ground that the plaintiff had not taken out a permit for the drilling of an oil and gas well and paid the prescribed fee of $1,000 for such permit, as provided by its ordinances; that plaintiff paid the said $1,000 fee under protest, and took out a permit as required by the city ordinances, and thereupon the city made the water connection theretofore requested by him. The parties further stipulated that as a general practice the lessor of oil and gas lands reserves a one-eighth royalty, and that such was the prevailing rate of royalty reserved in the Oklahoma City field; that the lessee under an oil and gas lease on state school land was subject to and paid gross production tax on the working interest oil, that is, the seven-eighths interest of the lessee, and that the lessee of such lease was also subject to the general laws of the state requiring him to carry workmen's compensation insurance.

A copy of plaintiff's oil and gas lease is attached to his petition and appears in the record.  Therefrom it appears that the lease was made for a term of five years from date and as long thereafter as oil and gas, or either of them, were produced in paying quantities from the lands covered thereby; that the lessor reserved a one-eighth royalty, or in lieu thereof, the market value of said royalty, to be delivered to it free of all costs; that the lease required a

well to be completed within one year from date; further provided for the payment of rentals in case the well was not so completed, and provided that upon the violation of any of the substantial terms or conditions of the lease, the Commissioners of the Land Office should have the right to terminate the lease and declare it null and void. It further provided that the lessee could at any time surrender the lease upon payment of all rentals and other liabilities then accrued and due thereunder.

A copy of the city ordinance regulating the drilling for and production of oil and gas within the U-7 Zone in which the production of oil and gas was permitted in Oklahoma City, was also introduced in evidence. It contains many regulatory provisions, and requires the obtaining of a permit, and the payment of a $1,000 permit fee, as a prerequisite to the drilling of a well for oil and gas within said zone.

The sole question presented for determination, as stipulated by the parties in the district court, is as follows:

" . . . whether or not the plaintiff, as a lessee of the mineral rights in land belonging to the State of Oklahoma is subject to the terms and provisions of the sections of the City's ordinances set forth in Exhibit A hereto and could lawfully be required to take out a permit for the drilling of an oil and gas well on said State owned land and to pay the prescribed permit fee therefor, . . ."

The sections referred to as set forth in Exhibit A of the stipulation are those requiring the taking out of a permit to drill before commencing a well for oil and gas, and the payment of a permit fee in connection with obtaining a permit. The trial court held that the immunity of the State of Oklahoma from regulations imposed by ordinances of the city of Oklahoma City did not extend to the lessee of mineral rights owned by the State of Oklahoma in land located within the corporate limits of the city, and administered by the Commissioners of the Land Office, and denied plaintiff the relief sought. Plaintiff appeals.

Plaintiff in this court states and defendant admits that defendant is a municipal corporation, a political subdivision of the state, and exerts only such powers as are expressly granted to it, or such as may be necessarily implied from those granted by the Constitution and statutes of the state.

Plaintiff next contends that the State of Oklahoma being the owner of the school lands of the state, the general rule that a municipality may not regulate or control in any degree the property of the state applies in the instant case, citing 43 C.J., p. 247, §247; Kentucky Institution for Education of Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402; City of Fulton v. Sims, 127 M. App. 677, 106 S.W. 1094; Salt Lake City v. Board of Education of Salt Lake City, 52 Utah 540, 175 P. 654, and other similar cases. Examination of the authorities cited by plaintiff discloses that in each case the institutions sought to be subjected to the regulatory provisions of the city ordinances were institutions owned, maintained, and operated solely by the state by or through boards or commissions provided by law, or appointed pursuant to law, to control and operate such institutions. In all these cases the courts held that, under the conditions existing in each case, it was plain that the Legislature did not intend to subject the property of the state to the regulatory provisions of the city ordinances, but intended that the commissions or other bodies supervising and controlling such institutions should have sole and exclusive control thereof. As stated in Kentucky Institute for Education of Blind v. City of Louisville, supra:

"It is competent for the state to retain to itself some part of the government even within the municipality, which it will exercise directly, or through the medium of other selected and more suitable instrumentalities. How can the city have ever a superior

authority to the state over the latter's own property, or in its control and management? From the nature of things it cannot have."

Plaintiff also cites the case of Oklahoma City v. Sanders (C.C.A. 10) 94 Fed. 2d 323, 115 A.L.R. 363, in which the city sought to require a building contractor erecting for the federal government a low cost housing project to comply with its ordinances on inspections and permits. In that case the court held that by 80 O.S. 1941 §2, exclusive jurisdiction over the land involved had been by the state ceded to the federal government, and that in such case the municipality had no authority over it.

There is a real and substantial factual difference between the cases cited by plaintiff and the instant case. In the instant case, by his oil and gas lease plaintiff acquired an interest in the land involved, in that he was granted the exclusive privilege of entering thereon and prospecting for oil and gas, and upon the discovery of oil and gas was vested with the ownership of seven-eighths of the amount produced. See Rich v. Doneghey, 71 Okla. 204, 177 P. 86, 3 A. L. R. 352, and Nicholson Corp. v. Ferguson, 114 Okla. 16, 243 P. 195. While the land was owned by the state, benefits derived by the state from the production of oil and gas therefrom were the same as those derived by any other landowner leasing his land in the Oklahoma City field. The lessee conducted the operation involving the search for and production of oil and gas for his own profit and at his own expense, free from any control or supervision whatever by the state, whose sole remedy was to terminate the lease in the event the lessee failed to comply with its terms. The regulation of the lessee's operations by requiring him to obtain a permit from the city, including the payment of the required permit fee, was not a direct burden upon the state, and so far as the record shows did not affect its interest in any way.

In Helvering v. Mountain Producers Corp., 303 U.S. 376, 82 L. Ed. 907, 58 S. Ct. 623, the Supreme Court of the United States re-examined the question of whether or not a lessee producing oil and gas from lands owned by a state was subject to an income tax upon the income received by it from such operation. The court held that it was subject to such tax, and overruled prior decisions holding to the contrary. In that case the court said:

"The power to tax should not be crippled 'by extending the constitutional exemption from taxation to those subjects which fall within the general application of nondiscriminatory laws, and where no direct burden is laid upon the governmental instrumentality and there is only remote, if any, influence upon the exercise of the functions of government'. Willcuts v. Bunn, 282 U.S. 216, 225, 75 L. Ed. 304, 306, 51 S. Ct. 125, 71 A.L.R. 1260, and illustrations there cited."

And further, after citing certain authorities, the court said:

"These decisions in a variety of applications enforce what we deem to be the controlling view—that immunity from nondiscriminatory taxation sought by a private person for his property or gains because he is engaged in operations under a government contract or lease cannot be supported by merely theoretical conceptions of interference with the functions of government. Regard must be had to substance and direct effects. And where it merely appears that one operating under a government contract or lease is subject to a tax with respect to his profits on the same basis as others who are engaged in similar businesses, there is no sufficient ground for holding that the effect upon the government is other than indirect and remote."

This case was approved and followed in Oklahoma Tax Commission v. The Texas Co., decided March 7, 1949, 336 U.S. 342, 93 L. Ed. 721, in which was involved the right to levy a gross production tax upon oil produced from restricted Indian lands by the lessee of such lands, and the court held that

the interest of the lessee was subject to the tax.

The rule announced in these cases applies with equal force to the instant case, since, as above pointed out, the permit fee is levied solely against the lessee and the burden or restriction upon the exercise of the functions of government involved in the subjection of the lessee to the provisions of the city ordinance requiring him to obtain the permit is so remote as to be practically nonexistent. The ordinance, in this respect, does not purport to regulate the state or its use of its land in any manner, but in the exercise of police power seeks to regulate the operations of plaintiff which, although conducted upon land belonging to the state, are free from control or supervision by the state, or that the regulation complained of is the regulation of the lessee's private business only.

We have repeatedly held that the city ordinance in question was a valid regulation under the police power of the city. Gant v. City of Oklahoma City, 150 Okla. 86, 6 P. 2d 1065; Gruger v. Phillips Petroleum Co., 192 Okla. 259, 135 P. 2d 485.

Affirmed.