Dear Senator Aldridge:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. How may two entities, such as the Corporation Commission and an incorporated city, both exercise" exclusive jurisdiction" over the same activities, as provided in 17 O.S. 2001, § 52[17-52](B)?
 2. May a charter city exercise jurisdiction, power and authority over the drilling and operation of oil and gas wells such that the city could deny an application for the drilling and operation of an oil and gas well located within corporate city limits, even if the Corporation Commission has authorized the drilling and operation of the oil and gas well?
 3. May a charter city require an operator of an oil and gas well located within corporate city limits to obtain permission from the city council and pay a fee prior to the plugging of a well even if the Corporation Commission has ordered the well to be plugged?
 4. If the answer to question three is yes, may a charter city deny an application of an operator of an oil and gas well located within corporate city limits to plug the well even if the Corporation Commission has ordered the well to be plugged?
 I.
Your first question concerns 17 O.S. 2001, § 52[17-52](B) which provides, "The Corporation Commission and incorporated cities and towns shall have exclusive jurisdiction over permit fees for the drilling and operation of oil and gas wells." Id. This subsection appears within the section of law that sets forth the jurisdiction, power and authority of the Corporation Commission.Id. § 52. Subsection 52(A)(1) confers exclusive jurisdiction on the Corporation Commission with respect to various oil and gas activities, including "the exploration, drilling, development, producing or processing for oil and gas on the lease site." Id.
§ 52(A)(1)(c).
The Oklahoma Supreme Court has held that conferring this exclusive jurisdiction does not take away the general police powers of charter cities to provide for the safety and health of their inhabitants and thus, charter cities may regulate drilling and exploration within city limits. Gant v. City of OklahomaCity, 6 P.2d 1065, 1068 (Okla. 1931) [hereinafter Gant I]. Cities have the power under their zoning authority "to regulate and restrict the real estate within the city limits for the development and production of oil and gas." Gant v. City ofOklahoma City, 15 P.2d 833 (syllabus ¶ 1) (1932) [hereinafterGant II]. Cities have the power to regulate "the location and use of buildings, structures and land for trade, industry, residence, or other purposes." 11 O.S. 2001, § 43-101[11-43-101].
Subsection 52(B) of Title 17 recognizes that cities as well as the Corporation Commission may impose permit fees for drilling and operating oil and gas wells. "There is no doubt a city, under its police power, may enact ordinances regulating the drilling of oil and gas wells within its city limits." City of Hartshorne v.Marathon Oil Co., 593 P.2d 97, 99 (Okla. 1979). The amount of a city's permit fee "must be limited to the necessary or probable expenses of issuing the licenses and the necessary supervision and regulation of the business so licensed." Id. The court has upheld the imposition of permit fees by cities for wells drilled on land owned by the State within city limits. Ptak v. City ofOklahoma City, 229 P.2d 567 (syllabus) (Okla. 1951).
You first ask how two entities can exercise "exclusive jurisdiction." "Exclusive" means "excluding or having power to exclude (as by preventing entrance or debarring from possession, participation, or use)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 793 (3d ed. 1992). "Exclusive jurisdiction" is defined as "[a] court's power to adjudicate an action or class of actions to the exclusion of all other courts." BLACK'S LAW DICTIONARY 856 (7th ed. 1999). The exclusive jurisdiction over permit fees for drilling and operating of oil and gas wells, as provided by 17 O.S. 2001, § 52[17-52](B), means that both the Corporation Commission and an incorporated city may impose permit fees for drilling and operating oil and gas wells, but that no other entity may impose such fees.
 II.
You next ask whether a charter city may deny an application for the drilling and operation of an oil and gas well located within corporate city limits, even if the Corporation Commission has authorized the drilling and operation of the oil and gas well.
Since your question refers specifically to a "charter city," it may be helpful to review the principles governing a charter city's powers in relation to conflicting State law. The Oklahoma Constitution authorizes any city with more than two thousand inhabitants to "frame a charter for its own government, consistent with and subject to the Constitution and laws of this State." OKLA. CONST. art XVIII, § 3(a). "Charter municipality" is defined in the Municipal Code as "any municipality which has adopted a charter in accordance with the provisions of the Constitution and laws of Oklahoma[.]" 11 O.S. 2001, § 1-102[11-1-102](1). "Once a municipal charter has been adopted and approved, it becomes the organic law of the municipality in all matters pertaining to the local government of the municipality and prevails over state law on matters relating to purely municipal concerns[.]" Id. "The test as to whether a home rule municipality's laws control over conflicting state statutes is: `Whether the power being exercised is purely municipal, or whether there is a wider public interest involved.'" Reed v.City of Tulsa, 569 P.2d 451, 453 (Okla. 1977).
The Oklahoma Supreme Court held that:
 The conferring upon the corporation commission of the power to enact rules and regulations governing the drilling of wells for oil or gas within the state does not deprive the state of power to delegate to cities the right to impose restrictions on the drilling of wells within the limits of the cities.
C.C. Julian Oil Royalties Co. v. City of Oklahoma City,29 P.2d 952 (syllabus ¶ 6) (Okla. 1934). Ordinances imposing restrictions have been upheld. Gant I, 6 P.2d at 1068; Exparte Briggs, 54 P.2d 404, 406 (Okla.Crim. 1935). The cases focus upon the city's police power to protect its inhabitants from the possible deleterious effects of oil and gas operations with the city limits. Gant I, 6 P.2d at 1068; Ex parteBriggs, 54 P.2d at 406.
The power of municipalities to regulate oil and gas drilling within city limits is also recognized in 52 O.S. 2001, § 137[52-137], as follows:
 Nothing in this act[1] is intended to limit or restrict the rights of cities and towns governmental corporate powers to prevent oil or gas drilling therein nor under its police powers to provide its own rules and regulations with reference to well-spacing units or drilling or production which they may have at this time under the general laws of the State of Oklahoma.
Id. (footnote added).
The fact that the Corporation Commission has issued a permit to drill a well would not prevent a city from denying an application for a permit to drill the well pursuant to its municipal ordinances when, for example, the location was not zoned for such an activity. Therefore, a charter city may exercise jurisdiction, power and authority over the drilling and operation of oil and gas wells within the city limits, such that a charter city could deny an application for the drilling and operation of an oil and gas well located within corporate city limits, even if the Corporation Commission has authorized the drilling and operation of the oil and gas well.
 III.
Your final two questions, which concern a charter city's authority with respect to plugging wells, are interrelated. You ask whether a charter city may require an operator of an oil and gas well located within corporate city limits to obtain permission from the city council and pay a fee prior to plugging a well even if the Corporation Commission has ordered the well to be plugged. If the answer to the question is yes, you ask if a charter city may deny an application of an operator of an oil and gas well located within corporate city limits to plug the well even if the Corporation Commission has ordered the well to be plugged.
"Oklahoma law provides that upon abandonment of an oil well the owner or operator is obligated, responsible and liable for plugging the well in accordance with the applicable rules of the Corporation Commission." Gannon v. Mobil Oil Co.,573 F.2d 1158, 1162 (Okla. 1978). "Abandoned wells shall be plugged under the direction and supervision of Commission employees as may be prescribed by the Commission." 17 O.S. 2001, § 53[17-53]. The Corporation Commission's administrative rules provide that any working interest owner and operator of any well "shall be jointly and severally liable and responsible for the plugging thereof." OAC 165:10-11-3(b). An operator who fails to commence plugging operations after due notice may be fined up to $1,000.00. OAC 615:10-11-3(f). In cases where the owner or operator responsible for plugging a well fails to do so, the Corporation Commission is responsible for plugging the well to prevent pollution. 52 O.S. 2001, §§ 309[52-309], 310(A)(2). This responsibility is based on a legislative finding "that it is in the public interest to protect the waters and lands of the state against pollution." Id. § 309. The Oklahoma Supreme Court has held that the Corporation Commission's power to regulate oil and gas conservation measures and to order the replugging of purging wells extends to wells located on restricted Indian lands. Currey v. Corp. Comm'n,617 P.2d 177, 180 (Okla. 1980).
Although numerous cases establish that cities have the authority to regulate drilling and operation of an oil and gas well located within corporate city limits, no cases specifically deal with a city's authority relating to plugging a well. This office has previously considered the question of whether a city ordinance takes precedence over a Corporation Commission permit issued to authorize a salt water disposal well to be located inside the corporate limits of the city. See A.G. Opin. 81-146. In that Opinion, the Attorney General observed that "[w]hile no Oklahoma cases have dealt with municipal ordinances regulating salt water waste disposal wells, it would seem that salt water pollution, being a by-product of oil and gas production and carrying with it distinct public dangers from its improper disposal, presents the same considerations which have led the courts to permit municipalities to regulate oil and gas well drilling and production co-extensively with the Corporation Commission." Id.
at 259.
The salt-water disposal well question was analogous to the drilling question addressed in the previous section in that both concern a permissive act of the Corporation Commission that allows an activity (drilling or disposal) to be conducted in a location where the city may not allow the activity. These issues are distinguishable from the situation where the Corporation Commission has mandated that an activity (plugging) take place to prevent environmental harm that could extend beyond city limits. Cities clearly have an interest in seeing that wells within city limits are properly plugged as the environmental hazard of unplugged abandoned wells would directly affect city residents. With respect to the power of municipalities to regulate in an area where state regulations exist, the court has stated:
 Where the Legislature has made or may by general law make a specific police regulation, that fact of itself will not prevent the lawmaking power of a city from making further regulations on the same subject, not inconsistent with general laws. A municipality may move in the same direction as the Legislature, but not contrary to nor in an opposite direction.
Sparger v. Harris, 131 P.2d 1011, 1014 (Okla. 1942) (citation omitted). "In order for there to be a conflict between a state enactment and a municipal regulation, both must contain either express or implied conditions which are inconsistent and irreconcilable with one another." Moore v. City of Tulsa,561 P.2d 961, 963 (Okla. 1977). A city's requirement for an application and fee to plug a well is not inconsistent with a Corporation Commission order to plug a well.
Charter cities may require an application and fee for plugging a well; however, the city could not deny an application to plug a well where the Corporation Commission has ordered the well to be plugged. Since plugging abandoned wells is a matter of statewide environmental concern (see 52 O.S. 2001, § 309[52-309]), State law and Corporation Commission orders would prevail over any conflicting municipal ordinances or municipal rulings. See Reed,569 P.2d at 453. An application and fee requirement imposed by a municipality does not conflict with a Corporation Commission order to plug a well. The amount of a city's permit fee "must be limited to the necessary or probable expenses of issuing the [permit] and the necessary supervision and regulation of the business so licensed. "Marathon Oil Co., 593 P.2d at 99.
 It is, therefore, the official Opinion of the Attorney General that:
 1. The exclusive jurisdiction over permit fees for drilling and operating oil and gas wells, as provided by 17 O.S. 2001, § 52[17-52](B), means that both the Corporation Commission and an incorporated city may impose permit fees for drilling and operating oil and gas wells within city limits, but that no other governmental entity may impose such fees.
 2. A charter city may exercise jurisdiction, power and authority over drilling and operating oil and gas wells such that the city could deny an application for drilling and operating an oil and gas well located within corporate city limits, even if the Corporation Commission has authorized the drilling and operation of the oil and gas well. 52 O.S. 2001, § 137[52-137]; see Reed v. City of Tulsa, 569 P.2d 451, 453 (Okla. 1977); C.C. Julian Oil Royalties Co. v. City of Oklahoma City, 29 P.2d 952 (syllabus ¶ 6) (Okla. 1934).
 3. A charter city may require the operator of an oil and gas well to submit an application to the city council and pay a fee for plugging a well even if the Corporation Commission has ordered the well to be plugged; however, the city council may not deny an application to plug a well that the Corporation Commission has ordered to be plugged. See A.G. Opin. 81-146; Sparger v. Harris, 131 P.2d 1011, 1014 (Okla. 1942); Moore v. City of Tulsa, 561 P.2d 961, 963 (Okla. 1977). State law would prevail over any conflicting municipal laws because plugging abandoned wells is matter of statewide public interest as a protection against pollution. 52 O.S. 2001, § 309[52-309].
W.A. DREW EDMONDSON Attorney General of Oklahoma
KATHRYN BASS Assistant Attorney General
[1] The title of the Act in House Bill No. 187 states it is "[a]n Act amending Sections 2, 3 and 4, of Chapter 131, Session Laws of Oklahoma, 1933, providing for the spacing of oil wells in the common sources of oil supply in this State, more effectively preventing waste and adjusting the correlative rights of producers of oil and royalty owners in such common sources of supply, and for other purposes[.]" 1935 Okla. Sess. Laws ch. 59.