PAWHUSKA OIL & GAS CO. v. CITY OF PAWHUSKA *et al.*

No. 5943.   Opinion Filed September 22, 1914.

Rehearing Denied May 3, 1915.

(148 Pac. 118.)

GAS—Gas Companies—Rights—Deposit for Meter—Validity of Statute.
Where, pursuant to section 12, art. 2, c. 26, Sess. Laws 1909, a domestic pipe line corporation was granted a franchise to lay, use, maintain pipes and mains below and on the surface of streets, alleys, etc., of a municipality of more than 500 inhabitants, and where the franchise granted to said company the right to furnish natural gas to its citizens at not to exceed a certain maximum rate for 1,000 cubic feet as registered by standard meters for the measurement of natural gas or at a flat rate at the option of the customers at a certain maximum price, **held,** that an act approved April 28, 1913 (Sess. Laws 1913, p. 309, c. 152), requiring said corporation to furnish gas through standard meters at meter rate, was a valid exercise of the police power of the state reserved by article 18, section 7, of the Constitution. **Held,** further, that said company in attempting to conform with the requirements of the act had the right, by rules and regulations, to require a deposit of $5 from each customer before installing his meter so as to secure protection thereof and the payment of his gas bill.

(Syllabus by the Court.)

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by the City of Pawhuska and another·against the Pawhuska Oil & Gas Company, a corporation. Judgment for plaintiffs, and defendant brings error. Reversed and rendered.

*Leahy & MacDonald,* for plaintiff in² error.

*Peters & Mosier,* for defendant in error G. W. Goss.

TURNER, J.   From an order of the district court of Osage county rendered and entered November 22, 1913, perpetually enjoining the Pawhuska Oil & Gas Company, a domestic pipe line company, plaintiff in error, not only from cutting off its gas supply and refusing to furnish the city of Pawhuska and G. W. Goss, defendants in error, and all its other customers who had elected to so take gas at a flat rate, but from enforcing certain rules and regulations pertaining to supplying all its customers with gas through meters at a meter rate, which the company was threatening to do, the gas company brings the case here. It assigns that the court erred in granting the perpetual injunction.   The record discloses that, pursuant to section 22, art. 2, c. 26, pp. 435, 436, Sess. Laws. 1909, which provides:

"Every domestic gas pipe line corporation in this state is hereby given authority to build, construct and maintain gas pipe lines, over, under, across or through all highways, bridges, streets or alleys in the state, or any public place therein under the supervision of the inspector of oil and gas wells and pipe lines as to where and how in such highways, bridges, streets, alleys and public places said pipe lines shall be laid, subject to the control of the local municipalities as to how the business of distribution in that municipality shall be conducted   *   *   *   "

—the city of Pawhuska, a city of more than 500 inhabitants, after referendum proceedings duly had pursuant to article 18, sec. 5b, and section 17, art. 1, c. 44, Sess. Laws 1907-08, on August 9, 1911, granted to said company by ordinance a franchise to lay, use, and maintain gas pipes

and mains upon and below the surface of the streets and alleys of said city, and the right to maintain a system of gas pipes and gas works therein and to sell and supply gas to its inhabitants. Of course, as stated in the act, this franchise was subject to the police power of the city, or, as stated in the act, "subject to the control of local municipalities as to how the business of distribution in that municipality shall be conducted." *Mayor and Council of City of Pawhuska v. Pawhuska Oil & Gas Co. et al.*, 28 Okla. 563, 115 Pac. 353.

The pertinent parts of said franchise read:

"Sec. 3. Under the permission and authority hereby granted, the said grantee shall furnish natural gas to the citizens at a reasonable rate, which shall in no case exceed fifteen cents per one thousand cubic feet, as registered by standard meters for the measurement of natural gas, said meters to be furnished by and be the property of the grantee, or at a flat rate at the option of the customers, which said flat rate shall in no case exceed the following prices, to wit:    [Then follow the rates.]"

The record further discloses that on April 28, 1913, while said company was furnishing gas pursuant to said franchise both at a flat rate and through standard meters at a meter rate, the Legislature passed an act (chapter 152, Sess. Laws 1913, p. 309), section 1 of which provides:

"That all persons, firms or corporations, or other business organizations engaged in the business of furnishing natural gas in municipalities of this state, to the inhabitants thereof, shall do so through standard meters at meter rates, provided.    *    *    *    "

—and prescribing a penalty. The record further discloses that, with intent to comply with the act, said company refused further to furnish gas to its customers at a flat rate, and, preparatory to furnishing the same to all its customers through standard meters at meter rates, distributed among them certain printed rules and regulations

pertaining to such distribution, when which was done this suit was brought.

In support of the action of the court in perpetually enjoining the company, as stated, it is urged that the franchise, fixing as it does both a flat rate and a meter rate, constitutes a contract between the city and the company the obligation of which the state cannot impair, as is attempted by the act aforesaid. This was, in effect, the holding of the trial court, and that said act is void. The court erred; this for the reason that said act was one of police regulation intended to prevent the waste of gas. The very act authorizing the city to grant this franchise is entitled "An act to regulate the use and preservation of oil and gas, * * * " and, stripped to the point, gives this and like companies authority to build pipe lines through the streets and alleys of municipalities of this state with the consent and "subject to the control of the local municipalities as to how the business of distribution in that municipality shall be conducted." Which shows the intent of the state to be, in authorizing the municipality to grant this franchise, to reserve to the municipality, notwithstanding the terms of the franchise, the power to police the business of distributing gas thereunder in that municipality. This police power had theretofore been reserved both to the state and the city. Article 18, sec. 7, of the Constitution provides:

"No grant, extension or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment."

Having been expressly reserved by said section of the Constitution to both the state and the municipality, and again expressly reserved to the city by the act authorizing the municipality to grant the franchise, the reservation of the power was as much a part of the franchise as if

written therein. It follows that whether the franchise amounted to a contract between the city and the company we need not say, for, sure it is, the state, by the act complained of, had a right to say to the company as it did in effect by the terms of said act that, in the interest of the conservation of the natural resources of the state, the company should no longer be permitted to sell gas at a flat rate, but thereafter was required to furnish the same to its customers (with certain exception named in the act) through standard meters and at meter rates. And this was a proper exercise of police power.

In *Commonwealth v. Trent et al.*, 117 Ky. 34, 77 S. W. 390, 4 Ann. Cas. 209, the court said:

"The position that defendants may do what they please with the gas after it is reduced to possession by them cannot be maintained. For, as gas goes out of the gasometer, its place is taken by other gas coming from the well. Property is the creation of law. * * * The Legislature may protect from waste the natural resources of the state, which are the common heritage of all. The right of the owner of property to do with it as he pleases is subject to the limitation that he must have due regard to the rights of others. To allow the storehouse of nature to be exhausted by the waste of the gas would be to deprive the state and its citizens of the many advantages incident to its use. That the Legislature may prevent this is well settled. *Ohio Oil Co. v. Indiana*, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729; *State v. Ohio Oil Co.*, 150 Ind. 21, 49 N. E. 809, 47 L. R. A. 627; Donahue on Petroleum & Gas, section 23."

The company had the right to require a deposit of $5 from each customer before installing his meter, the same to be a guaranty for the payment of his gas bill, among other things. There is no division of authority on this point.

Wyman, in his work on Public Service Corporations (volume 2, sec. 877), says:

"Thus the common regulation in the supply service that the company may require a deposit as security for bills not yet incurred is held to be justifiable, provided that the amount of the deposit required is not so far from what a current bill would be. Such a requirement requiring deposit in advance of ascertainment of the amount due could only be made obligatory by a general regulation to this effect."

In *Shepard v. Milwaukee Gas Light Co.*, 6 Wis. 539, 70 Am. Dec. 479, the court said:

"The third rule of the company, allowing the company to demand security for the gas consumed, or a deposit of money to secure payment thereof, appears to be just, and necessary to guard against loss. As the delivery of the gas is necessarily its consumption, and as the amount delivered is ascertained by the amount consumed, it would seem to be just and right that the company should not be compelled to furnish it without reasonable security for payment, in convenient amounts and at proper periods."

In *Owensboro Gas Light Co. v. Hildebrand* (Ky.) 42 S. W. 351, the Supreme Court of Kentucky said:

"It is conceded by appellee that appellant may prescribe reasonable rules and regulations, and impose reasonable conditions upon the consumers, and require proper security for the payment of their bills, and may even require deposits in advance."

See, also, *Vanderberg, v. Kansas City, Mo., Gas Co.*, 126 Mo. App. 600, 105 S. W. 17; *Williams v. Mutual Gas Co.*, 52 Mich. 499, 18 N. W. 236, 50 Am. Rep. 266.

For the reasons stated the cause is reversed, and judgment rendered discharging the writ.

All the Justices concur.