**CITY OF CHICKASHA, a Municipal Corporation of the State of Oklahoma, Appellee,**

v.

**ARKANSAS LOUISIANA GAS COMPANY, a Delaware Corporation, Appellant.**

No. 53253.

Court of Appeals of Oklahoma, Division No. 2.

Feb. 17, 1981.

Released for Publication by Order of Court of Appeals March 19, 1981.

Robert L. Huckaby, Vaughn, Stack, Huckaby & Frailey, Chickasha, for appellee.

William D. Curlee, Lytle, Soule & Emery, Oklahoma City, for appellant.

BOYDSTON, Judge.

The City of Chickasha (hereinafter called City) filed suit for a permanent injunction to prohibit Arkansas Louisiana Gas Company (hereinafter called Arkla) from locating its meters in violation of the City's recently passed ordinance purporting to regulate the future location and installation of gas meters. From an order of the district court upholding the ordinance and granting the injunction Arkla appeals.

Arkla is a natural gas utility subject to the laws of the State of Oklahoma and the rules of the corporation commission. Chickasha is a charter city which granted a franchise to Arkla in 1969.[1] On July 28, 1977, the City passed an ordinance[2] which required Arkla to install its meters *"[O]n or adjacent to the structure to which the service is being provided ...."* The current corporation commission rules[3] provide *"[E]very meter shall be installed at the nearest feasible point to the property line or curb line of the premises of the consumer ...."* Arkla resolved the resulting legal dilemma by continuing to follow the rules of the corporation commission which resulted in the issuance of several citations by City and eventual convictions for violations of the new ordinance. Arkla was fined $35 for each violation. City brought this action in district court to permanently enjoin Arkla from committing further violations.

In arriving at its decision the trial court worked from the basic premise that the ordinance and the rules and regulations of the corporation commission were irreconcil-

---

1. Chickasha, Ok., Ordinance No. 1000 (November 13, 1969).

2. Chickasha, Ok., Ordinance No. 1383 § 18–52 (July 28, 1977).

3. Oklahoma Corporation Commission Rules governing operations of public utilities gas companies, (Rule 7(d)).

able. The trial court held that the ordinance was passed by the city council as a safety measure. Proof was offered that the primary reason for its passage was for the safety of the motoring public, who from time-to-time were prone to swerve from the road and strike gas meters which had been installed near the property lot lines in accordance with the corporation commission rules. There was also some evidence that the meters were unsightly and aesthetically unpleasant to the overall image of the city. The trial court found that the ordinance dealt with a matter of "purely local concern" and was therefore a valid exercise of the police power of the city. Therefore, the court held that the ordinance superseded state law and the rules of the corporation commission.

Arkla's brief raises three questions:

1. Is the ordinance a constitutionally invalid impairment of the contract which exists in the form of the franchise?,

2. Can a city ordinance supersede state law and corporation commission rules? and

3. Is injunction a proper remedy to enforce such an ordinance?

The primary issue raised here concerns the conflict of the ordinance with the corporation commission rules. City argues that because it is a charter city 11 O.S.1977 Supp. § 13–109 [4] authorizes it to legislate via its "police powers" in *any* area so long as the subject matter is one of "purely local concern."

First, we agree with the obvious conclusion of the trial court that the subject ordinance is in direct conflict with corporation commission rules. We do not agree however that a finding that the conflicting ordinance is of "purely local concern" is sufficient grounds for ignoring those rules.

■ We hold that the charter enabling statutes permit resolution of statutory/charter conflicts in favor of the city charter only where the statute and charter provisions relate to purely city *governing* conflicts. They may not be used to achieve predomination of an ordinance over a conflicting statute in matters of statewide concern in a attempt to override substantive statutory law which relates to matters of statewide concern. These statutes relate to the *procedural* aspects of governing and to the *form* of governing, not to the substantive rights, duties and liabilities which the citizens of the state hold in common.

■ The regulation of public utilities has always been a matter of general statewide concern. Article 9 § 15–19 of the Oklahoma State Constitution authorized the creation of the corporation commission, vesting it with broad powers to supervise, regulate and control utilities. The very fact that the state created a commission specifically to deal with public services and utilities coupled with the pervasive scheme of regulation inherent throughout the rules and regulations of the commission would indicate not only that this is an area of statewide concern but also that the state specifically intended to reserve its authority over these matters. The corporation commission acts as an agent of the sovereignty, i. e. the State of Oklahoma.

Title 17 O.S.1971 §§ 151–155 vests in the corporation commission the right to "supervise public utilities, not only in the setting of rates to be charged, but in establishing *rules, requirements and regulations* affecting their services." (emphasis added)

The question presented is not merely whether the city has police power to effect such an ordinance but rather which level of government can claim superiority in establishing standards of protection for the

---

4. Title 11 O.S.1977 Supp. 13–109 provides:

"Whenever a charter is in conflict with *any law relating to municipalities* in force at the time of adoption and approval of the charter, the provisions of the *charter* shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of the conflict."

Section 1–102 further provides:

"Once a municipal charter has been adopted and approved, it becomes the organic law of the municipality in all matters *pertaining to the local government* of the municipality and prevails over state law on matters pertaining to *purely municipal concerns;* (emphasis added)

health, safety and welfare of the public. In this instance the city's authority must yield to that of the state. Article 18 § 7 of the Oklahoma State Constitution mandates this position by stating:

"No grant extension or renewal of any franchise or other use of the streets, alleys or other public grounds or ways of any municipality, shall divest the State, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment."

■ Further, the franchise itself between the City and Arkla specifically recognizes the authority of the state acting through the corporation commission by referring to the rules and regulations of the corporation commission or "any other lawfully constituted regulatory authority" as a standard by which the duties of the contracting parties are to be measured.[5] A city's power is delegated to it by the state and that power remains with the city until such time as the state sees fit to exercise its paramount authority directly by a law enacted by the people or indirectly by a legislative subdivision of the government having such power by virtue of its delegation by the supreme legislative authority. By Chapter 93, Session Laws 1913, such power was delegated to the corporation commission. *City of Pawhuska v. Pawhuska Oil & Gas Co.*, 64 Okl. 214, 166 P. 1058 (1917).[6]

The smooth functioning of the public utilities system demands uniformity. If every municipality could change by ordinance the service requirements as declared by the corporation commission that uniformity would eventually collapse.

Arkla argues that the use of the label "police power" is a ruse and the ordinance is a barely disguised attempt to legislate an aesthetic attribute, therefore it was a sham exercise of the police power. We hold that it is immaterial whether it was an otherwise valid exercise of City's police power,

since it purports to impose local regulation over a state-regulated utility, thus invading the mandated duties and legal domain of the corporation commission.

■ More particularly, we hold that where an ordinance materially effects rights and duties of franchised utilities, whether in rate setting, or in the regulation of the day to day affairs of the utility, specifically where the activity under consideration effects, directly or indirectly, the utilities duty to repair, maintain or install its equipment, then the applicable state law as promulgated by the rules of the corporation commission shall prevail.

■ As to whether injunction should lie as a proper remedy for the violation of such an ordinance, we hold that where a potential conflict exists between the ordinance and corporation commission rules affecting any regulated activity of a utility, injunction should not lie. It is a well settled legal principal that injunction is an appropriate remedy only where no adequate legal remedy exists.

■ In this case, the appropriate legal remedy is provided in the rules and regulations of the corporation commission.[7]

Rule 4(a) provides:

"In any case where compliance with any of these rules would result in unreasonable hardship or expense to the utility or the consumer, the requirements of the rules may be waived or modified by Order of any commission *upon application of any interested party*, and after notice and hearing." (emphasis added)

In *Dunbar v. Tulsa Metro Water Authority*, Okl., 363 P.2d 145 (1961) this issue was squarely addressed. The court held that dismissal of a suit to enjoin a country club acting as a public utility from discontinuing water service was proper *for want of jurisdiction* by stating:

---

5. Supra, footnote 1.

6. See also *City of Pawhuska v. Pawhuska Oil & Gas Co.*, 47 Okl. 342, 148 P. 118 (1914) wherein the court held that the state could even with-

draw power previously delegated to municipalities where it was in the public interest to do so.

7. Supra, footnote 3 (Rule 4(a)).

"If . . . is a public utility, the Corporation Commission, under Title 17 O.S.1951 § 152, and by our Constitution, has general supervision over public utilities with power to prescribe rules and regulations affecting their service and operation. The . . . Court . . . would not have jurisdiction to enter or make a binding order directing . . . to continue its water service or to enjoin it from discontinuing its water service."

The supreme court held in *Speaker v. Board of County Commr's of Okla. County,* Okl., 312 P.2d 438 (1957) that:

"It is a well established principle of law that where an administrative agency is vested with the exclusive authority to determine a matter, the courts will not 'step in', and interfere with, or prevent, its making that determination, nor will they assume jurisdiction of the matter until the complainant's administrative remedy has been exhausted."

The proper remedy in cases such as this is to first request a hearing before the corporation commission. Only when this avenue has been exhausted will the doors of the courts be opened to the parties.

The judgment of the trial court is reversed with directions to dissolve the restraining order.

BACON, P. J., and BRIGHTMIRE, J., concur.