1998 OK CIV APP 39

**The CITY OF KINGFISHER, Appellee,**

v.

**STATE of Oklahoma; and Drew Edmondson, as Attorney General for the State of Oklahoma, Appellants.**

**No. 90402.**

Court of Civil Appeals of Oklahoma, Division No. 4.

March 10, 1998.

Sara J. Boeckman, Kingfisher City Attorney, Kingfisher, for Appellee.

James Robert Johnson, Assistant Attorney General, W.A. Drew Edmondson, Attorney General, Oklahoma City, for Appellants.

Diane Pedicord, Sue Ann Nicely, Oklahoma Municipal League, Inc., Oklahoma City, Amicus Curiae City of Kingfisher.

---

Sherry Blankenship, Ted Pool, Pool, Blankenship & Vincent, Oklahoma City, Amicus Curiae State of Oklahoma.

*OPINION*

STUBBLEFIELD, Presiding Judge.

¶ 1  The City of Kingfisher, a "home rule" city, filed a petition in the district court seeking a declaratory ruling that Attorney General Opinion No. 80–218, 12 Okla. Op. Att'y Gen. 371 (Opinion), is invalid. The Opinion stated that section 307 of the Open Meeting Act, 25 O.S.1981 §§ 301–314(Act), does not allow a municipality to enter executive sessions where the charter of the municipality requires all municipal meetings to be public.

¶ 2  City asserted that it had received a complaint that its executive sessions were in violation of the Act and that City officials had refrained from holding such sessions for fear of legal reprisal. However, City also asserted that it needed to: (1) consult with attorneys regarding pending state and federal litigation and a petition being circulated regarding a bond issue; (2) meet with its attorneys regarding negotiations for the purchase of real estate and utility easements; and, (3) discuss personnel matters, which, if done in open meeting, might violate state and federal labor laws. Thus, City sought declaration that the Opinion is null and void and that its Board could meet in executive session as provided by section 307.

¶ 3  After the trial court overruled the Attorney General's motion to dismiss, City filed a motion for summary judgment. In response, the Attorney General contended that there was no conflict between the Act and a municipal charter providing for all meetings to be open, because a municipal charter may expand open meeting requirements beyond that required by State law.

¶ 4  The Oklahoma Municipal League, Inc. (OML), filed an amicus curiae brief in favor of City's position. Its primary position was that a charter requirement that all city council meetings shall be open to the public does not foreclose the council from discussing certain subjects in closed session. It contends:

An executive session is part of an open meeting. It is not convened separately. Nor does it occur in a vacuum. The subject of the session is listed as an item of business for an openly convened meeting, is taken up in open meeting, and is acted on in open meeting. The fact that a discussion of a particular matter occurs without an audience does not render the entire meeting a closed meeting. The meeting is open.

¶ 5  The OML also maintained that any construction of a charter that prohibits executive sessions for the purposes set forth in section 307 is invalid because it irreconcilably conflicts with the statewide public policy of that statute.

¶ 6  Brown, Brown, Wood and Schoelen, Inc., (Brown), a corporation involved in pending litigation against City, filed a brief as amicus curiae in opposition to City's petition. Brown claimed that any executive sessions held by the city commissioners would be in violation of both the City Charter and the Act. Brown asserted that a violation of the Act would occur, even though the Act allows executive sessions for the purposes delineated by City, because the City Charter, pursuant to 11 O.S.1991 § 13–109, repeals the Act provisions for specific executive sessions, and the only unrepealed operative section of the Act is the prohibition: "No public body shall hold executive sessions...." Section 307.

¶ 7  The trial court granted summary judgment to City, overruling the Opinion, and holding that home rule charter cities may conduct executive sessions for purposes allowed under 25 O.S. Supp.1997 § 307, of the Open Meetings Act, even if city charters state that all meetings must be open to the public. The State and Attorney General appeal, asserting that the trial court erred as a matter of law (1) by ruling that a home rule charter municipality may conduct executive sessions under the Act despite the provision of the municipal charter that all sessions of the municipality governing board must be open to the public; and (2) by overruling the Opinion.

¶ 8  The facts of this case are not in dispute, and our review is solely upon a question of law. An appellate court indepen-

dently reviews questions of law as it is its role to define the law. *Baptist Bldg. Corp. v. Barnes,* 1994 OK CIV APP 71, 874 P.2d 68.

¶ 9   In defense of the lower court's judgment, City points to the fact that the court in *Oklahoma Association of Municipal Attorneys v. State,* 1978 OK 59, 577 P.2d 1310, overruled Attorney General Opinion 77–222, 10 Okla. Op. Att'y Gen. 190, which concluded, under the 1977 version of the Open Meeting Act, a public body could not meet in executive session for the purpose of privately conferring with its lawyers. The court in that case, noting the attorney-client privilege recognized for public officers and agencies in 12 O.S. Supp.1977 § 418.2,[1] established that there are exceptions to the then-statutory limitation on executive session. The court held that a public body could engage in executive session with its attorney "concern[ing] a pending investigation, claim, or action, and disclosure of matters discussed would seriously impair the ability of the public body to process the claim or conduct the pending investigation, litigation or proceeding in the public interest." *Id.* at ¶ 19, 577 P.2d at 1315.[2]

¶ 10   City's Charter, adopted in June 1910, art. IV, § 3, in regard to the City's governing Board provides: *"All sessions* of said Board, whether regular or called *shall be opened to the public."* (Emphasis added.) That charter was amended in 1984, but the provision relative to open meetings remained unchanged.

¶ 11   The Open Meeting Act, 25 O.S. Supp.1997 §§ 301–314, was promulgated in 1977. The Act has been amended twelve times. However, except for certain provisions relative to a board of education and exempting specifically enumerated "public bodies," there were no significant changes in the statutes relative to permissibility of executive sessions until 1993.

¶ 12   The two amendments made in 1993 broadened significantly those instances in which executive sessions were permissible under section 307 by providing:

A.   No public body shall hold executive sessions unless otherwise specifically provided in this section.

B.   Executive sessions of public bodies will be permitted only for the purpose of:

1.   Discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any individual salaried public officer or employee;

2.   Discussing negotiations concerning employees and representatives of employee groups;

3.   Discussing the purchase or appraisal of real property;

4.   Confidential communications between a public body and its attorney concerning a pending investigation, claim, or action if the public body, with the advice of its attorney, determines that disclosure will seriously impair the ability of the public body to process the claim or conduct a pending investigation, litigation, or proceeding in the public interest;

. . . .

6.   Discussing matters involving a specific handicapped child; or

7.   Discussing any matter where disclosure of information would violate confidentiality requirements of state or federal law.

¶ 13   Relative to "home rule" and the supremacy of charter provisions over Oklahoma statutes, 11 O.S.1991 § 13–109, provides:

Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict.

¶ 14   However, noting that a city charter draws its legal vitality from Okla. Const. art. 18, § 3(a) and from the implementing provisions of 11 O.S.1991 § 13–101, the Supreme Court in *Simpson v. Dixon,* 1993 OK 71, ¶ 21, n. 42, 853 P.2d 176, 186, n. 42, stated:

---

1.   Now codified at 12 O.S.1991 § 2502(A)(2).

2.   As hereinafter noted, the subsequent 1993 amendments to section 307 provide for executive session for confidential communication between a public body and its attorney.

Charter provisions, which have the force of a city's fundamental law, supersede state *law only when they affect a subject that is deemed to lie exclusively within municipal (or local) concern. All conflicting charter provisions must yield to the State's Constitution and to the general laws which govern state functions.* (Footnotes omitted.) (Emphasis added.)

*Id.* at ¶ 21, 853 P.2d at 186.

■ ¶ 15 The court in *Reed v. City of Tulsa,* 1977 OK 159, ¶ 8, 569 P.2d 451, 453, established that the test as to whether a home rule municipality's laws control over conflicting state statutes is: "Whether the power being exercised is purely municipal, or whether there is a wider public interest involved." Thus, our inquiry must focus on whether the city charter provision is strictly local or whether it has broader implications.

¶ 16 Herein, City contends that all municipalities with similar charter provisions are affected because their officials are caught in the same quandary—they can be held in willful violation of the City Charter and/or the Open Meeting Act if they hold executive sessions, but could be liable for claims pursuant to 42 U.S.C. § 1983, if they deliberate relative to certain issues in a public meeting. City also claims that if the Opinion stands, the governing officials in any municipality with a similar law are restricted substantially in their protection of private rights as well as the public interest in matters of claims, litigation and bargaining for and purchase of land.

¶ 17 We are somewhat persuaded by OML's analysis that a private discussion session, where allowed by section 307, held as part of an open meeting, does not contravene City's Charter provision requirement for "all" open sessions. However, we must also conclude that such a charter provision addresses matters not purely of municipal concern.

¶ 18 A review of the areas of statutorily permissible executive sessions indicates clear intent to protect public *and private* interests. Non-public discussion regarding matters of employment, a specific child with a disability, and information protected by confidentiality laws insures protection for the reputations of private individuals, which might be affected by public discussion and comment. Aside from this individual protection, a clear public benefit accrues from avoidance of possible costly litigation that might result from open expression on these sensitive matters.

¶ 19 Private discussions regarding collective bargaining and purchase or appraisal of real property safeguards municipalities' bargaining position and insures sound application of public funds.[3] Likewise, allowance of confidential communications between a public body and its attorney protects the public interest by insuring there is no impairment of the ability of a public officer or agency to process a claim or conduct pending investigation and/or litigation, or to proceed in the public interest. 12 O.S.1991 § 2502(A)(2).

¶ 20 The permissible executive session provisions promulgated by the legislature in section 307 reflect legislative protection of private and public interests that go well beyond matters of purely municipal concern. A much wider public interest is involved. Therefore, the conflicting municipal law must yield. *Reed,* 1977 OK 159 at ¶ 8, 569 P.2d at 453.

¶ 21 Based on the foregoing analysis, we find that the lower court properly overruled Attorney General Opinion 80–218 and granted summary judgment to City.

¶ 22 AFFIRMED.

¶ 23 REIF and RAPP, JJ., concur.

---

**3.** As stated in *Oklahoma Association of Municipal Attorneys,* 1978 OK 59 at ¶ 9, 577 P.2d at 1313, quoting from *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (1968): "If the public's 'right to know' compelled admission of an audience, the ringside seats would be occupied by the government's adversary, delighted to capitalize on every revelation of weakness."