Question Submitted by: The Honorable Mike Ritze, State Representative, District 80; The Honorable Chris Kannady, State Representative, District 91; The Honorable Kevin Calvey, State Representative, District 82
2015 OK AG 12
Decided: 11/30/2015
Oklahoma Attorney General Opinions

Cite as: 2015 OK AG 12, __ __

 

¶0 This office has received your requests for an official Attorney General Opinion in which you ask, in effect, the following questions:
Pursuant to Title 52, Section 137.1 of the Oklahoma Statutes, political subdivisions of the State of Oklahoma may (1) "enact reasonable ordinances, rules and regulations concerning road use, traffic, noise and odors incidental to oil and gas operations within [their] boundaries" so long as such ordinances, rules, and regulations are not inconsistent with regulations established under Title 52 or by the Oklahoma Corporation Commission, and (2) "establish reasonable setbacks and fencing requirements for oil and gas well site locations as are reasonably necessary to protect the health, safety and welfare of [their] citizens but may not effectively prohibit or ban any oil and gas operations[.]" Section 137.1 also provides, in relevant part, that "[a]ll other regulations of oil and gas operations shall be subject to the exclusive jurisdiction of the Corporation Commission."
1. Do the provisions of Section 137.1, which limit municipal regulation of oil and gas operations, apply equally to charter municipalities organized under Article XVIII, Section 3 of the Oklahoma Constitution and non-charter municipalities?
2. May a political subdivision regulate aspects of oil and gas operations that are not specifically enumerated in Section 137.1?
3. If a political subdivision adopts setback and/or fencing requirements for oil and gas well sites that effectively prohibit certain types of drilling within its boundaries, will those measures be enforceable in light of Section 137.1?
4. Will an ordinance adopted by a political subdivision be enforceable, notwithstanding a conflict with Section 137.1, if the ordinance (a) predates the statute, or (b) provides for an appeal process to a board of adjustment or local governing body?
5. How will it be determined whether an ordinance, rule, or regulation concerning road use, traffic, noise, or odors incidental to oil and gas operations or a particular setback and fencing requirement for oil and gas well site locations meet the reasonableness requirement of Section 137.1?
Background
¶1 A common theme underlying each of the questions presented is the proper balance of regulatory power between the State and its localities. While there is a clear hierarchy of regulatory authority between a State and its political subdivisions, see, e.g., City of Hartshorne v. Marathon Oil Co., 1979 OK 48, ¶ 6, 593 P.2d 97, 99, a locality is not without power to police matters within its boundaries. Indeed, the concept of concurrent jurisdiction has deep roots in Oklahoma law. See, e.g., Sparger v. Harris, 1942 OK 418, ¶ 19, 131 P.2d 1011, 1014 ("Where the Legislature has made or may by general law make a specific police regulation, that fact of itself will not prevent the lawmaking power of a city from making further regulations on the same subject, not inconsistent with general laws." (quoting Ex parte Johnson, 1921 OK CR 202, (Syllabus ¶ 4), 201 P. 533, 534 (Syllabus ¶ 4))); see also Moore v. City of Tulsa, 1977 OK 43, ¶ 2, 561 P.2d 961, 963 ("A municipal corporation may exercise police power on subjects of municipal concern which are also proper for statutory regulation, and where the state has not spoken the position of a municipal corporation is analogous to that of the state to the federal government with reference to matters of interstate commerce."). A full discussion of the contours of this balance between state and local powers is beyond the scope of this opinion. Nevertheless, this framework informs our analysis regarding the effects of Section 137.1 on local regulation of oil and gas activities.
¶2 Municipalities in Oklahoma have had a long-recognized role in regulating oil and gas operations within their boundaries.[1] See Vinson v. Medley, 1987 OK 41, ¶ 6, 737 P.2d 932, 936 ("A city is empowered to enact zoning laws to regulate the drilling of oil-and-gas wells with a view to safeguarding public welfare. Without these regulations residents would be exposed to multiple dangers and unnecessary inconveniences." (footnote omitted)); City of Hartshorne, 1979 OK ¶ 6, 593 P.2d at 99 ("There is no doubt a city, under its police power, may enact ordinances regulating the drilling of oil and gas wells within its city limits."); Van Meter v. H.F. Wilcox Oil & Gas Co., 1935 OK 188, ¶ 27, 41 P.2d 904, 911 ("It is no longer open to doubt that a city has the authority to regulate the drilling of oil wells within its corporate limits."). Thus, courts have upheld ordinances ranging from simple permitting and fee requirements, see, e.g., Ptak v. Oklahoma City, 1951 OK 99, 229 P.2d 567, to those that confine oil and gas operations to certain areas within the municipality and restrict the number of wells allowed per parcel. See, e.g., Van Meter, 1935 OK 188, 41 P.2d 904.
¶3 At the same time, the State has an interest in regulating the extraction and production of oil and gas resources, an industry that has long been a driving force behind the State's economy. See, e.g., C.C. Julian Oil & Royalties Co. v. Capshaw, 1930 OK 452, ¶ 13, 292 P. 841, 844. But even with the creation of the Oklahoma Corporation Commission as the state entity with exclusive jurisdiction over the drilling and operation of oil and gas wells, see 1917 Okla. Sess. Laws ch. 207, § 2, municipalities have retained some regulatory authority regarding oil and gas production within city limits. See Gant v. Oklahoma City, 1931 OK 241, ¶ 11, 6 P.2d 1065, 1068 (declining to hold "that the general police power of Oklahoma City to provide for the safety and health of its inhabitants, is in any way taken away by virtue of the jurisdiction conferred upon the corporation commission, to superintend the drilling for oil and gas, and their carrying and preservation"); C.C. Julian Oil & Royalties Co. v. Oklahoma City, 1934 OK 88, ¶ 16, 29 P.2d 952, 955 (rejecting the argument that the Legislature's grant to the Corporation Commission of "exclusive power" to regulate oil and gas drilling deprived cities of the authority "to adopt any ordinance, rule, or regulation attempting to govern or control the drilling of such wells").
¶4 We acknowledged this concurrent authority in a 2006 Attorney General Opinion interpreting Section 52(B) of Title 17, which grants the Corporation Commission and incorporated cities and towns, together, "exclusive jurisdiction over permit fees for the drilling and operation of oil and gas wells." 17 O.S.2011, § 52(B). In that opinion, we stated, "[t]he fact that the Corporation Commission has issued a permit to drill a well would not prevent a city from denying an application for a permit to drill the well pursuant to its municipal ordinances when, for example, the location was not zoned for such an activity." A.G. Opin. 2006-12, at 94. The concept of shared authority over oil and gas regulation was also recognized in Section 137 of Title 52, which provided as follows:

Nothing in this act is intended to limit or restrict the rights of cities and towns governmental corporate powers to prevent oil or gas drilling therein nor under its police powers to provide its own rules and regulations with reference to well-spacing units or drilling or production which they may have at this time under the general laws of the State of Oklahoma.

52 O.S.2011, § 137 (repealed by 2015 Okla. Sess. Laws ch. 341, § 2). The "act" referenced in Section 137 is found in 1935 Session Laws, Chapter 59, Article 1, which addressed, among other things, "the spacing of oil wells in the common sources of oil supply in this State, more effectively preventing waste and adjusting the correlative rights of producers of oil and royalty owners in such common sources of supply[.]" The legislation also clarified the role of the Corporation Commission in regulating well spacing to prevent waste in oil and gas production. See id. § 3.
¶5 In the most recent legislative session, however, the Legislature altered this shared regulatory structure via its enactment of Senate Bill 809. See 2015 Okla. Sess. Laws ch. 341. The bill had two sections. The second section repealed the entirety of Section 137 of Title 52, quoted above. Id. § 2. The first section created Section 137.1 of Title 52, which, subject to the following exceptions, provides that "all...regulations of oil and gas operations shall be subject to the exclusive jurisdiction of the Corporation Commission." See id. § 1 (emphasis added). The first exception authorizes municipalities, counties, or other political subdivisions to:

enact reasonable ordinances, rules and regulations concerning road use, traffic, noise and odors incidental to oil and gas operations within [their] boundaries, provided such ordinances, rules and regulations are not inconsistent with any regulation established by Title 52 of the Oklahoma Statutes or the Corporation Commission.

Id. (emphasis added). This exception appears to be a recognition of the traditional power of municipalities to regulate traffic and road use, see 11 O.S.2011, §§ 22-117, 36-101, and abate nuisances, see id. § 22-121, within their boundaries. See also Moore, 1977 OK ¶ 2, 561 P.2d at 963 (describing home-rule municipalities' powers of self-government to address similar concerns).
¶6 The second exception permits municipalities, counties, or other political subdivisions to:

establish reasonable setbacks and fencing requirements for oil and gas well site locations as are reasonably necessary to protect the health, safety and welfare of its citizens but may not effectively prohibit or ban any oil and gas operations, including oil and gas exploration, drilling, fracture stimulation, completion, production, maintenance, plugging and abandonment, produced water disposal, secondary recovery operations, flow and gathering lines or pipeline infrastructure.

2015 Okla. Sess. Laws ch. 341, § 1 (emphasis added). This provision appears to be directed at the zoning power of a municipality to restrict certain industries and activities to particular sub-areas within city limits. See 11 O.S.2011, § 43-101. As noted above, municipal zoning ordinances that affect oil and gas development have been the subject of litigation since shortly after statehood.[2] 

Analysis

¶7 Your questions touch on several topics regarding the impact of Senate Bill 809--and in particular the provisions of new Section 137.1 of Title 52--on the regulatory authority of political subdivisions. These are addressed in the following order. First, we analyze whether Section 137.1 affects charter municipalities and statutory municipalities differently, concluding that it does not. Specifically, if local regulation by either type of municipality conflicts with Section 137.1, the regulation is void. Second, we examine whether regulation by political subdivisions is now limited to only those aspects of oil and gas operations that are specifically enumerated in Section 137.1, and conclude that it is. Third, we address three specific scenarios in which local regulation would conflict with Section 137.1 and conclude that, in each case, the local regulation would be void. Finally, even permissible local regulations of oil and gas activity--i.e., those that address a subject matter specifically listed in Section 137.1 and that do not otherwise conflict with state law--must also be reasonable. Therefore, in the final section we review the guidelines for determining whether local oil and gas regulations satisfy the reasonableness requirement of Section 137.1.

1. The provisions of Section 137.1 of Title 52 apply equally to charter municipalities organized under Article XVIII, Section 3 of the Oklahoma Constitution and non-charter municipalities.
¶8 "In Oklahoma, municipalities are divided into two categories: charter and non-charter (or statutory) municipalities." Trentham v. Isaacs, 2014 OK CIV APP 35, ¶ 16, 324 P.3d 425, 428. As the name suggests, statutory/non-charter municipalities derive their legislative authority from statute. See 11 O.S.2011, § 14-101 (permitting municipalities to "enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions") (emphasis added); see also City of Hartshorne, 1979 OK, ¶ 4, 593 P.2d at 99 ("A city has no inherent power or authority; it possesses and can exercise only those powers expressly granted, or incidental to powers expressly granted, by the state."). In all cases of conflict between an ordinance of a non-charter municipality and state law, the ordinance is void and state law controls. See Nucholls v. Bd. of Adjustment, 1977 OK 3, ¶ 8, 560 P.2d 556, 559; Morehead v. Dyer, 1973 OK 121, ¶¶ 8-9, 518 P.2d 1105, 1107-08 .
¶9 As for charter (or "home-rule") municipalities, the Oklahoma Constitution permits a municipality with a population greater than 2,000 to "frame a charter for its own government, consistent with and subject to the Constitution and laws of this State[.]" Okla. Const. art. XVIII, § 3(a); see also 11 O.S.2011, § 13-101. "A city which adopts a home-rule charter . . . is accorded full power of local self-government, and as such the city has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants, even though general statutes exist relating to the same subjects." Moore, 1977 OK ¶ 2, 561 P.2d at 963. In cases of conflict between charter provisions and state law, the charter will control if the provision "affects a subject that is deemed to lie exclusively within municipal concern." Vinson, 1987 OK ¶ 5, 737 P.2d at 936 (emphasis added); see also 11 O.S.2011, § 1-102 ("Once a municipal charter has been adopted and approved, it becomes the organic law of the municipality in all matters pertaining to the local government of the municipality and prevails over state law on matters relating to purely municipal concerns[.]"). Conversely, if a charter provision conflicts with statutes "affecting matters of general statewide concern, or in matters where the state ha[s] a sovereign interest, the statutes control." Brown v. Dunnaway, 1952 OK 297, ¶ 13 248 P.2d 232, 234; see also City of Chickasha v. Arkansas Louisiana Gas Co., 1981 OK CIV APP 5, ¶ 7, 625 P.2d 638, 641 (holding that charter enabling statutes "may not be used to achieve predomination of an ordinance over a conflicting statute in matters of statewide concern in an attempt to override substantive statutory law which relates to matters of statewide concern").
¶10 "The line between a chiefly municipal affair and a sovereign state interest is not well illuminated." Edwards v. City of Sallisaw, 2014 OK 86, ¶ 11, 339 P.3d 870, 874; see also Maurice H. Merrill, Constitutional Home Rule for Cities Oklahoma Version, 5 Okla. L. Rev. 139, 159 (1952) (noting the difficulty in identifying any "harmonizing principle" to differentiate matters of statewide concern from "merely municipal affairs"). However, there is little question that regulation of oil and gas production is a matter of statewide concern. As the Oklahoma Supreme Court long ago recognized:

[I]t cannot be disputed that the production of petroleum and its various products is one of the major industries of this state, and one in which many of its citizens are vitally concerned. The almost universal use of oil, gasoline, and other petroleum products, together with the fact that a major portion of the revenues to support our educational and eleemosynary institutions and other departments of state government is derived from taxes levied upon this industry, makes the conservation of this great natural resource a matter of grave concern to the state and every citizen thereof.

C.C. Julian Oil & Royalties Co. v. Capshaw, 1930 OK ¶ 13, 292 P. at 844; cf. Jacobs Ranch, LLC v. Smith, 2006 OK 34, ¶ 53, 148 P.3d 842, 856 (noting the Legislature's responsibility to regulate the state's water resources for the benefit of the state as a whole). With the passage of Senate Bill 809, the Legislature reinforced this notion by situating all regulation of oil and gas operations, unless specifically reserved to political subdivisions, within the exclusive jurisdiction of a single state agency.
¶11 Therefore, because the production of oil and gas is a matter of statewide concern, municipal charter provisions that conflict with state regulation of oil and gas operations are invalid. See, e.g., Brown, 1952 OK ¶ 13, 248 P.2d at 234. Likewise, state regulation of oil and gas operations will, in all cases, control over conflicting municipal ordinances of non-charter municipalities. See, e.g., Nucholls, 1977 OK ¶ 8, 560 P.2d at 559. Accordingly, the effect of Section 137.1 of Title 52 on a municipality will be the same regardless of whether it is a charter or a non-charter municipality: conflicting municipal regulations are void and of no effect.[3] 

2. Political subdivisions may regulate only those aspects of the oil and gas industry that are specifically listed in Section 137.1 of Title 52.

¶12 Your second question involves the scope of local authority to regulate oil and gas operations in light of the limiting language of Section 137.1. We believe the answer lies in the plain language of the statute. See Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 11, 230 P.3d 853, 859 ("If a statute is plain and unambiguous, it will not be subjected to judicial construction but will receive the interpretation and effect its language dictates."). Indeed, it is clear from the entirety of Senate Bill 809 that the Legislature intended to limit local regulation to the areas specifically enumerated therein. 
¶13 We reach this conclusion for several reasons. First, the bill repealed Section 137 of Title 52, which recognized a broad authority of municipalities, pursuant to their general police power, to ban oil and gas drilling within city limits or to implement their own rules and regulations for well-spacing, drilling, and production. See 2015 Sess. Laws ch. 341, § 2. 
¶14 Second, the broad municipal authority recognized in Section 137 was replaced with clear subject-matter limitations on oil and gas regulation by political subdivisions. Now, Section 137.1 permits only regulations that (i) concern "road use, traffic, noise and odors incidental to oil and gas operations" or (ii) establish "setbacks and fencing requirements for oil and gas well site locations[.]" See 2015 Sess. Laws ch. 341, § 1.[4] 
¶15 Finally, the Legislature included explicit language in Section 137.1 that "[a]ll other regulations of oil and gas operations shall be subject to the exclusive jurisdiction of the Corporation Commission." Id. (emphasis added). The plain language of these provisions, when taken together, evince clear legislative intent to limit local oil and gas regulation to only those areas set forth in Section 137.1.[5] See, e.g., State v. Tate, 2012 OK 31, ¶ 7, 276 P.3d 1017, 1020 ("Words and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context, and they must harmonize with other sections of the Act.").

3. Local regulations that conflict with Section 137.1 of Title 52 are invalid and unenforceable, regardless of when the regulation was adopted or whether it provides for an appeal process.
¶16 In this section, we address three scenarios described in your request letters, each involving potential conflicts between local regulation of oil and gas activity and the provisions of Section 137.1. Specifically, you asked, in effect, (a) whether setback or fencing requirements that have the effect of banning certain types of oil and gas activity are invalidated by Section 137.1, (b) whether a preexisting local regulation that conflicts with Section 137.1 will remain valid due to the fact that it was in place before the effective date of Senate Bill 809, and (c) whether a local regulation that conflicts with Section 137.1 is valid if it includes an appeal process to a board of adjustment or local governing body.

A. Setback and/or fencing requirements for oil and gas well sites that effectively prohibit certain types of oil and gas drilling within the subdivision's boundaries conflict with Section 137.1 and are invalid.

¶17 Section 137.1 provides that, while political subdivisions may "establish reasonable setbacks and fencing requirements for oil and gas well sites," they "may not effectively prohibit or ban any oil and gas operations." 52 O.S.Supp.2015, § 137.1 (emphasis added). Such operations include, among other things, "oil and gas exploration, drilling, [and] fracture stimulation[.]" Id. The plain language of the statute proscribes the implementation by political subdivisions of fencing or setback requirements for well sites that have the effect--whether direct or indirect--of prohibiting or banning any oil and gas operations. As noted above, "[i]f a statute is plain and unambiguous, it will not be subjected to judicial construction but will receive the interpretation and effect its language dictates." Rogers, 2010 OK ¶ 11, 230 P.3d at 859. We emphasize, however, that while the answer to this question is clear in the abstract, its application to particular ordinances, rules, or regulations is likely to be less obvious. Specifically, whether a particular setback or fencing requirement for oil and gas well sites--or any set of such ordinances, rules, and regulations taken together--has the effect of prohibiting oil and gas activity in violation of Section 137.1 will require a fact-specific inquiry undertaken on a case-by-case basis. Any such inquiry is beyond the scope of this opinion.

B. An ordinance that conflicts with Section 137.1 is void even if the ordinance was in existence before the effective date of the statute.

¶18 As a general rule, an ordinance, regardless whether it was earlier enacted, "is impliedly repealed by a later valid statute on the same subject which is incompatible with it." 6 McQuillin Municipal Corporations § 21:32 (3d ed. 2015); see also City of St. Louis v. Doss, 807 S.W.2d 61, 63 (Mo. 1991) (holding that a preexisting municipal ordinance "was superceded and became unlawful when the [conflicting] statute was enacted"). The same can be said for municipal charter provisions. See 6 McQuillin Municipal Corporations § 21:28 ("Undoubtedly a subsequent statute supersedes an earlier charter provision or ordinance, where the repugnancy between the two makes it impossible that they both can stand and where there is nothing in the constitution or statutes giving the charter provision or ordinance continued force and effect locally despite the repugnancy.").
¶19 Oklahoma law supports this general rule. See Ex Parte Shaw, 1916 OK 179, 157 P. 900 (invalidating a local traffic ordinance that required drivers to register their vehicles with the city because the ordinance conflicted with a later-adopted state law that placed exclusive authority for vehicle registration with the State Department of Highways); City of Kingfisher v. State, 1998 OK CIV APP 39, ¶9, 958 P.2d 170, 172 (holding that a municipal charter provision that required all sessions of the city's governing board to be public was voided by later amendments to the Open Meetings Act that permitted executive session for certain purposes).
¶20 Moreover, a municipality may exercise only those powers that have been delegated to it by the State as the sovereign entity. See Fine Airport Parking, Inc. v. City of Tulsa, 2003 OK 27, ¶ 18, 71 P.3d 5, 11. And where such power has been delegated, it can also be withdrawn. See City of Chickasha, 1981 OK CIV APP ¶ 11, 625 P.2d at 641. Indeed, it is a "well-established rule that a municipal corporation is but a political subdivision of the state, and, being a mere creature of the state, the powers may be enlarged, modified, or diminished by the state, without its consent." Western Okla. Gas & Fuel Co. v. City of Duncan, 1926 OK 945, ¶ 13, 251 P. 37, 40.
¶21 In passing Senate Bill 809, the Legislature expressly withdrew the broad regulatory authority of localities over oil and gas operations, leaving in its place a more limited scope of power. See discussion in Section 2, pp. 7 - 8 above. With this withdrawal, localities no longer have the authority to enforce regulations that fall outside the powers specifically granted to them by the Legislature in Section 137.1. Thus, an ordinance or charter provision that conflicts with Section 137.1, but was adopted prior to the statute's effective date, is nevertheless invalid.

C. That an appeal process may exist for an ordinance that otherwise conflicts with Section 137.1 will not render the ordinance valid.

¶22 Similarly, the inclusion of a procedure for appeal to a board of adjustment or local governing body will not validate an ordinance that conflicts with Section 137.1. As explained above, an ordinance conflicting with Section 137.1 is null and void, leaving no doubt as to which party would prevail in any appeal. See City of Cherokee v. Tatro, 1981 OK 127, ¶ 8, 636 P.2d 337, 339 (noting futility of judicial review of city's denial of a variance where underlying ordinance is void on its face). Indeed, the statutory authority of a board of adjustment to grant special exceptions and variances from local zoning ordinances implicitly assumes the validity of the underlying ordinance. See 11 O.S.2011, §§ 44-104 - 107. Thus, a local appeal process will not serve to cure an otherwise invalid ordinance.

4. A political subdivision's regulation of oil and gas operations within its boundaries must be "reasonable" to comply with Section 137.1 of Title 52.
¶23 For the reasons outlined above, local regulation of oil and gas operations may not conflict with, or regulate areas not expressly enumerated in, Section 137.1. Further, Section 137.1 explicitly requires all such regulations to be reasonable.[6] See 52 O.S.Supp.2015 ,§ 137.1. In general, the reasonableness of a municipal ordinance can only be judged by applying the language of a particular ordinance to a specific set of facts. See, e.g., Hisaw v. Atchison, T. & S. F. Ry. Co., 1946 OK 139, ¶ 15, 169 P.2d 281, 284 ("A general ordinance may be unreasonable when applied to one state of facts or to one particular locality, and reasonable when applied to another set of facts or to another locality, and the fact that it may be unreasonable as to one particular place does not necessarily render it invalid as to all."). Accordingly, we cannot evaluate the reasonableness of any particular regulation not before us. Nevertheless, Oklahoma law does provide general guidelines for assessing the reasonableness of municipal zoning ordinances, which are the most obvious example of local regulation that will be affected by the enactment of Section 137.1.
¶24 In order to be considered reasonable, a zoning ordinance must be tethered to a municipality's proper exercise of its police power. See Clouser v. City of Norman, 1964 OK 109, ¶ 18, 393 P.2d 827, 829; Nucholls, 1977 OK ¶ 11, 560 P.2d at 560. For instance, Oklahoma zoning statutes allow municipalities, "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community," to enact regulations or restrictions on "the location and use of buildings, structures and land for trade, industry, residence or other purposes." 11 O.S.2011, § 43-101. This means that "[m]unicipal power to interfere by zoning with the general rights of landowners is not unlimited, and a restriction by the character of use cannot be imposed if it does not bear substantial relation to public health, safety, morals or general welfare." Nucholls, 1977 OK ¶ 11, 560 P.2d at 560. If the required relationship between the zoning ordinance and a permissible public purpose is absent, the ordinance will be invalidated as arbitrary and unreasonable. See Clouser, 1964 OK 109, ¶ 23, 393 P.2d at 830 (invalidating municipal ban on oil and gas drilling as applied to particular tract).
¶25 In many cases, the reasonableness of a zoning ordinance will amount to a judgment call. Indeed, as the Oklahoma Supreme Court has recognized, "the 'line established [by a zoning ordinance] is necessarily somewhat arbitrary, since a striking or marked difference cannot be expected to exist between property on one side of an established line and that on the other.'" Mid-Continent Life Ins. Co. v. Oklahoma City, 1985 OK 41, ¶ 15, 701 P.2d 412, 415 (quoting Beveridge v. Harper & Turner Oil Trust, 1934 OK 388, ¶ 24, 35 P.2d 435, 441). In cases where there is legitimate uncertainty as to whether a zoning ordinance bears a substantial relationship to a permissible public purpose, the uncertainty will be resolved in favor of the municipality.[7] Specifically, if the validity of a zoning ordinance is "fairly debatable" the legislative judgment of the governing body "must be allowed to control." McNair v. Oklahoma City, 1971 OK 134, ¶ 11, 490 P.2d 1364, 1367 (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 388 (1926)); see also Hud Oil & Refining Co. v. Oklahoma City, 1934 OK 94 (Syllabus ¶ 4), 30 P.2d 169, 170 (Syllabus ¶ 4) ("If there is room for debate as to whether a municipal ordinance is arbitrary or unreasonable, the court will not substitute its own judgment for that of the legislative body charged with the primary duty and responsibility of determining the question.").
¶26 Whether the validity of an ordinance is "fairly debatable" will vary case by case. Ultimately, the determination of whether a zoning ordinance is reasonable will depend on the nature of the restriction and the characteristics of the affected property. For instance, in Beveridge v. Harper & Turner Oil Trust, a municipal ordinance prohibiting drilling for oil and gas in an area of Oklahoma City was upheld due to, among other things, the dense population of the area, the likelihood of future growth and the inherent dangers and nuisance effects of oil and gas production at that time. See id., 1934 OK 398, ¶¶ 7 - 23, 35 P.2d 435, 438-40. By contrast, in Clouser v. City of Norman, the court found a similar ban to be unreasonable as applied to a ten-acre tract that was occupied only by a single family and where oil and gas development on the tract "could not affect other areas . . . [or] the future development of the city." See id., 1964 OK ¶ 22, 393 P.2d at 830.[8] While these decisions, along with the general rules reviewed herein, provide some guidelines for determining whether a particular ordinance, rule, or regulation is reasonable as required by Section 137.1, the ultimate determination of reasonableness can only be made on a case-by-case basis.

¶27 It is, therefore, the official Opinion of the Attorney General that:
1. The provisions of 52 O.S.Supp.2015, § 137.1, which limit municipal regulation of oil and gas operations, apply equally to charter municipalities organized under Okla. Const. art. XVIII, § 3 and non-charter municipalities.
2. The power of political subdivisions to regulate oil and gas activity is limited to those areas enumerated in 52 O.S.Supp.2015, § 137.1, specifically (a) enacting reasonable ordinances, rules, or regulations concerning road use, traffic, noise, and odors incidental to oil and gas operations, (b) establishing setbacks and fencing requirements for oil and gas well site locations as are reasonably necessary to protect the health, safety, and welfare of their citizens, but that do not effectively prohibit or ban any oil and gas operations, and (c) enacting ordinances, rules, and regulations regarding development of areas that have been or may be delineated as a one-hundred-year floodplain but only to the minimum extent necessary to maintain National Flood Insurance Program eligibility.
3. Setbacks or fencing requirements for oil and gas well site locations adopted by a political subdivision that effectively prohibit certain types of oil and gas drilling within the subdivision's boundaries conflict with 52 O.S.Supp.2015, § 137.1, and are therefore invalid.
4. A municipal ordinance that conflicts with 52 O.S.Supp.2015, § 137.1 is invalid and unenforceable regardless of when the ordinance was adopted or whether it provides for an appeal process.
5. In addition to the aforementioned limitations, 52 O.S.Supp.2015, § 137.1 requires regulations of oil and gas activity by political subdivisions to be reasonable. To meet this standard, the local regulation must bear a substantial relation to public health, safety, morals or general welfare of the community, a determination that can only be reached by examining the specific language of the regulation and the application to a particular set of facts. In cases of uncertainty or reasonable debate, doubt will be resolved in favor of finding the local regulation to be reasonable.

E. SCOTT PRUITT
Attorney General of Oklahoma
Ethan Shaner
Assistant Attorney General

FOOTNOTES
[1] While several of the questions addressed herein refer to political subdivisions generally, counties in Oklahoma do not have the same regulatory authority over oil and gas operations as municipalities. For instance, the extraction of oil and gas is specifically exempt from the zoning authority granted to counties. See 19 O.S.2011, §§ 866.30, 868.11; see also A.G. Opin. 86-37, at 66. We do not address in this opinion all of the implications of this disparate regulatory authority. 
[2] A third exception, not relevant here, permits political subdivisions to "enact reasonable ordinances, rules and regulations concerning development of areas within [their] boundaries which have been or may be delineated as a one-hundred-year floodplain but only to the minimum extent necessary to maintain National Flood Insurance Program eligibility." See 2015 Okla. Sess. Laws ch. 341, § 1. 
[3] Importantly, this opinion does not address the question of whether any particular ordinance or charter provision conflicts with Section 137.1 or any other state regulation of oil and gas operations. Answering that question would require parsing the language of both to determine whether they "contain either express or implied conditions which are inconsistent and irreconcilable with one another." Moore, 1977 OK ¶ 2, 561 P.2d at 963; see also Hampton v. Hammons, 1987 OK 77, ¶ 27, 743 P.2d 1053, 1060 (holding that in matters that "are of concern to both the city and state and not the exclusive concern of either," municipal and state regulations that are not irreconcilable "are to be construed cumulatively"). Such an inquiry is beyond the scope of this opinion. 
[4] As noted above, Section 137.1 also includes a third exception, not relevant here, pertaining to local regulation of flood plain development.
[5] However, we note that incorporated cities and towns, along with the Corporation Commission, may collect "permit fees for the drilling and operation of oil and gas wells." 17 O.S.2011, § 52(B). 
[6] While Section 137.1 explicitly requires local regulations of oil and gas operations to be reasonable, we note also the general principles that any local regulation "must be reasonable and not arbitrary or discriminatory." A.G. Opin. 2012-10, at 89. 
[7] Indeed, with regard to municipal ordinances more generally, there is a "presumption in favor of [upholding] a municipal ordinance." Garrett v. Oklahoma City, 1979 OK 60, ¶ 5, 594 P.2d 764, 766.
[8] Compare Mid-Continent Life Ins. Co., 1985 OK ¶ 14, 701 P.2d at 414 ("The existence of conflicting opinions, with the City's position supported by highly regarded planning experts, is one indication the zoning decision was 'fairly debatable' and best left to the sound legislative discretion of the municipality.") with City of Tulsa v. Swanson, 1961 OK 286, ¶ 10, 366 P.2d 629, 633 ("An academic opinion of a professional city planner as to the desirability of a particular restriction . . . will not, when contradicted by controlling physical facts, justify this court in holding as a matter of law that the question here presented is 'fairly debatable'. . . .").

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1921 OK CR 202, 201 P. 533, 20 Okl.Cr. 66, 
Ex parte Johnson
Discussed

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2014 OK CIV APP 35, 324 P.3d 425, 
TRENTHAM v. ISAACS
Discussed

 
1981 OK CIV APP 5, 625 P.2d 638, 
City of Chickasha v. Arkansas Louisiana Gas Co.
Discussed

 
1998 OK CIV APP 39, 958 P.2d 170, 69 OBJ 1435, 
KINGFISHER v. OKLAHOMA
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 41, 737 P.2d 932, 58 OBJ 1417, 
Vinson v. Medley
Discussed

 
1987 OK 77, 743 P.2d 1053, 58 OBJ 2210, 
Hampton v. Hammons
Discussed

 
1961 OK 286, 366 P.2d 629, 
CITY OF TULSA v. SWANSON
Discussed

 
1952 OK 297, 248 P.2d 232, 207 Okla 144, 
STATE EX REL. BROWN v. DUNNAWAY
Discussed

 
1946 OK 139, 169 P.2d 281, 197 Okla. 228, 
HISAW v. ATCHISON TOPEKA & SANTA FE RY. CO.
Discussed

 
1935 OK 188, 41 P.2d 904, 170 Okla. 604, 
VAN METER v. H. F. WILCOX OIL & GAS CO.
Discussed at Length

 
1916 OK 179, 157 P. 900, 53 Okla. 654, 
Ex parte SHAW
Discussed

 
1934 OK 88, 29 P.2d 952, 167 Okla. 384, 
C. C. JULIAN OIL & ROYALTIES CO. v. OKLAHOMA CITY
Discussed

 
1934 OK 94, 30 P.2d 169, 167 Okla. 457, 
HUD OIL & REF. CO. v. OKLAHOMA CITY
Discussed

 
1964 OK 109, 393 P.2d 827, 
CLOUSER v. CITY OF NORMAN
Discussed at Length

 
1934 OK 388, 35 P.2d 274, 168 Okla. 619, 
ATCHISON T. & S. F. RY. CO. v. EXCISE BD. OF WASHINGTON COUNTY
Cited

 
1934 OK 398, 35 P.2d 435, 168 Okla. 609, 
BEVERIDGE v. HARPER & TURNER OIL
Discussed at Length

 
1931 OK 241, 6 P.2d 1065, 150 Okla. 86, 
GANT et al. v. OKLAHOMA CITY
Discussed

 
1971 OK 134, 490 P.2d 1364, 
McNAIR v. CITY OF OKLAHOMA CITY
Discussed

 
1973 OK 121, 518 P.2d 1105, 
MOREHEAD v. DYER
Discussed

 
2003 OK 27, 71 P.3d 5, 
FINE AIRPORT PARKING, INC. v. CITY OF TULSA
Discussed

 
2006 OK 34, 148 P.3d 842, 
JACOBS RANCH, L.L.C. v. SMITH
Discussed

 
1930 OK 452, 292 P. 841, 145 Okla. 237, 
C. C. JULIAN OIL & ROYALTIES CO. v. CAPSHAW
Discussed

 
2010 OK 3, 230 P.3d 853, 
ROGERS v. QUIKTRIP CORP.
Discussed

 
2012 OK 31, 276 P.3d 1017, 
STATE v. TATE
Discussed

 
1977 OK 3, 560 P.2d 556, 
NUCHOLLS v. BOARD OF ADJUSTMENT OF CITY OF TULSA
Discussed

 
1977 OK 10, 560 P.2d 560, 
STATE EX REL. HUNT v. COMMUNITY NAT. LIFE INS. CO.
Discussed

 
1977 OK 43, 561 P.2d 961, 
MOORE v. CITY OF TULSA
Discussed

 
2014 OK 86, 339 P.3d 870, 
EDWARDS v. CITY OF SALLISAW
Discussed

 
1979 OK 48, 593 P.2d 97, 
CITY OF HARTSHORNE v. MARATHON OIL CO.
Discussed

 
1979 OK 60, 594 P.2d 764, 
GARRETT v. CITY OF OKLAHOMA CITY
Discussed

 
1981 OK 127, 636 P.2d 337, 
City of Cherokee v. Tatro
Discussed

 
1926 OK 945, 251 P. 37, 120 Okla. 206, 
WESTERN OKLAHOMA GAS & FUEL CO. v. CITY OF DUNCAN
Discussed

 
1951 OK 99, 229 P.2d 567, 204 Okla. 336, 
PTAK v. CITY OF OKLAHOMA CITY
Discussed

 
1942 OK 418, 131 P.2d 1011, 191 Okla. 583, 
SPARGER v. HARRIS
Discussed

 
1985 OK 41, 701 P.2d 412, 
Mid-Continent Life Ins. Co. v. City of Oklahoma City
Discussed

Title 11. Cities and Towns

 
Cite
Name
Level

 
11 O.S. 1-102, 
Definitions
Cited

 
11 O.S. 13-101, 
Municipalities May Adopt Charter
Cited

 
11 O.S. 14-101, 
Municipal Ordinances - Authority
Cited

 
11 O.S. 22-117, 
Traffic Regulations - Racing and Driving - Games and Amusements - School Zone Speed Limits and Signs
Cited

 
11 O.S. 43-101, 
General Powers of Municipalities
Discussed

 
11 O.S. 44-104, 
Powers
Cited

Title 17. Corporation Commission

 
Cite
Name
Level

 
17 O.S. 52, 
Corporation Commission - Jurisdiction
Discussed

Title 19. Counties and County Officers

 
Cite
Name
Level

 
19 O.S. 866.30, 
Exemptions from Zoning Regulations
Cited

Title 52. Oil and Gas

 
Cite
Name
Level

 
52 O.S. 137.1, 
Authority of Localities to Regulate Oil and Gas Operations - Fracking - Preemption
Discussed at Length

 
52 O.S. 137, 
Repealed by Laws 2015, SB 809, c. 341, § 2
Cited